Puntureri *v.* Pittsburgh, Appellant.

Argued April 13, 1951. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*J. Frank McKenna, Jr.,* Assistant City Solicitor, with him *Anne X. Alpern,* City Solicitor, for appellant.

No argument was made nor brief submitted for appellee.

OPINION BY GUNTHER, J., November 19, 1951:

Plaintiff filed his bill in equity against the City of Pittsburgh, appellant, seeking to restrain the City from requiring him to procure an amusement permit as required by the Amusement Tax Ordinance of 1947 of the City of Pittsburgh. Plaintiff averred that he held a retail liquor license and an amusement permit from the Pennsylvania Liquor Control Board; that the City was thereby prohibited by the Act of 1947 (No. 481) P. L. 1145 from requiring him to secure a municipal amusement permit. The matter was submitted to the court below upon a case stated and after argument the court in banc entered a decree enjoining the City of Pittsburgh from requiring plaintiff to procure an amusement permit, but concluded that plaintiff was required to collect the amusement tax and make returns to the City as required by municipal ordinance. The City of Pittsburgh alone has appealed so that inquiry is restricted solely to the question of whether the

City can require appellee to procure an amusement permit as required by the Amusement Tax Ordinance.

Appellee operates a restaurant in the City of Pittsburgh and has a license from the Liquor Control Board of the Commonwealth licensing him to sell beer and liquor. Appellee also has an amusement permit issued pursuant to §602(14) of the Liquor Control Act of 1933, as amended, (47 PS §744-602(14)) for which he pays an annual fee of $120.[1] The court below restrained the City of Pittsburgh from requiring appellee to obtain a municipal amusement permit on the ground that since appellee was the holder of an amusement permit from the Pennsylvania Liquor Control Board, the City was prohibited by the Act of June 25, 1947, P. L. 1145, from requiring that a permit be obtained, and that since "the State does regulate and require permits from retail liquor dealers to provide entertainment on licensed premises" it came squarely within the wording of Section 1 of the Act of 1947, P. L. 1145. The Act of 1947 in parts material here, provides: "It is the intention of this section to confer upon such political subdivision the power to *levy, assess and collect taxes* upon any and all subjects of taxation which the Commonwealth has power to tax but which it does not now tax or license, . . ." (Italics supplied)

A reading of the language of the Act of 1947 discloses that it forbids a local municipality from taxing a subject which is also taxed by the State. That issue is not before us on this record because the validity of the City Amusement Tax (as being in conflict with a state taxing statute) has not been appealed in this Court. The narrow inquiry here is whether a munici-

---

[1] Counsel have agreed that appellee would be subject to the payment of $1. for a permit each time a public dance is held and in addition a license fee of $15. per annum for the privilege of holding dances.

pality, in the exercise of the police power may require a person to obtain a permit in addition to and not in conflict with statutory regulations. It is conceded that appellee is required to obtain an amusement permit from the State Liquor Control Board, but it is likewise true that the interest of the Liquor Control Board in policing its licensees is to insure itself by proper inspection that the entertainment provided by the liquor licensees is not "lewd, immoral or improper". The general tenor of the Liquor Control Act discloses no intention on the part of the legislature that the regulation of restaurants having liquor licenses should not be supplemented by municipal bodies. It has been held that municipalities, in the exercise of their police power, may regulate certain occupations by imposing restrictions which are in addition to and not in conflict with statutory regulations. It is understandable that the State Liquor Control Board should require operators of restaurants having liquor licenses to obtain a special amusement permit. The interest of the City of Pittsburgh, however, is entirely different and far greater than the interest of the Liquor Control Board in the policing of liquor licensees. The City of Pittsburgh is interested in the safety of buildings, the entertainment facilities, the conduct of the patrons, as well as the character of the entertainment provided.

To that extent, it seems patent that the Commonwealth, through the Liquor Control Act, has not clearly intended to pre-empt the field of licensing restaurants providing entertainment and which also hold liquor licenses. The language in *Western Pennsylvania Restaurant Association v. Pittsburgh,* 366 Pa. 374, 77 A. 2d 616, is most pertinent here. "In the present instance we see nothing in the Act of 1945, P. L. 926, which indicates an intention on the part of the Legislature so to occupy and pre-empt the field of legislation . . . as to preclude supplementary legislation on

the part of municipalities where local conditions suggest the need of the imposition of additional standards . . ." The City Ordinance is not inconsistent with the State regulations relating to the sale of liquor, nor with the State regulations regarding amusement or entertainment in restaurants selling alcoholic beverages. Municipalities may in the exercise of their police power regulate certain occupations which are in addition to and not in conflict with statutory regulations by the imposition of supplementary restrictions. *Western Pennsylvania Restaurant Association v. Pittsburgh,* supra; *Brazier v. Philadelphia,* 215 Pa. 297, 301, 64 A. 508. Cf. *Radnor Township v. Bell,* 27 Pa. Superior Ct. 1; *City of Pittsburgh v. Streng,* 90 Pa. Superior Ct. 288, 290, 291.

Decree reversed.