Warren *v.* Philadelphia, Appellant.

Argued May 2, 1955. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Abraham L. Freedman,* City Solicitor, with him *Jacob J. Siegal* and *I. Jerome Stern,* Assistant City Solicitors, *Jerome J. Shestack,* First Deputy City Solicitor, for appellant.

*D. Arthur Magaziner, Philip Sterling,* and *Sterling, Magaziner, Stern & Levy,* for appellees.

*Joseph A. Keough,* for appellee.

*Morris B. Levitt,* for appellees.

*Simon Lenson,* for appellees.

OPINION BY MR. JUSTICE ARNOLD, June 27, 1955:

These three cases were argued together and will be disposed of in one opinion.

The several plaintiffs filed bills in equity against the City of Philadelphia, seeking a permanent injunction declaring defendant's rent control ordinance of 1955 void,[1] and restraining the enforcement thereof.

---

[1] The ordinance declares the existence of an emergency relative to housing, and seeks to regulate and control housing accommodations and evictions by establishing maximum rents and prohibiting evictions except on certain grounds.

In Section 5 it provides that evictions shall not be had unless "(1) The tenant has violated a substantial obligation of his tenancy other than the obligation to surrender possession of such housing accommodation and has failed to cure such violation after written notice by the landlord that the violation cease within ten days; or

(2) The tenant is committing or permitting a nuisance in such accommodations and such nuisance continues after written notice to the tenant that the same shall cease; or

(3) The tenant maliciously or by reason of gross negligence substantially damages the housing accommodation or his conduct is such as to interfere substantially with the comfort or safety of the landlord or of other tenants or occupants of the same or other adjacent building or structure; or

The city filed an answer to the complaint in equity and set up new matter. On motion for judgment on the pleadings the court below declared the Philadelphia Rent Control Ordinance unconstitutional and void. The court held that it was in conflict with various acts of

---

(4) Occupancy of the housing accommodations by the tenant is illegal and the landlord is subject to civil or criminal penalties therefor; or

(5) The tenant is using or permitting such housing accommodations to be used for an immoral or illegal purpose; or

(6) The tenant who had a written lease or other written rental agreement which terminates on or after May 1, 1953, has refused on demand of the landlord to execute a written extension or renewal thereof for a further term of like duration not in excess of one year, but otherwise on the same terms and conditions as the previous lease, excepting insofar as such terms and conditions are inconsistent with this ordinance; or

(7) The tenant has unreasonably refused the landlord access to the housing accommodations for the purpose of making necessary repairs or of showing the accommodations to a prospective purchaser, mortgagee or prospective mortgagee or other person having a legitimate interest therein, provided, however, that such refusal shall not be ground for removal or eviction if such inspection or showing of the accommodation is contrary to the provision of the tenant's lease or other rental agreement; or

(8) The landlord seeks in good faith to recover possession of housing accommodations because of immediate and compelling necessity for his own personal use and occupancy or for the use and occupancy of his parent or child; for the purposes of this section, the word 'parent' includes a father and father-in-law, mother and mother-in-law, and the word 'child' includes a son and son-in-law, daughter and daughter-in-law, stepchild and adopted child; or

(9) The landlord seeks in good faith to recover possession of housing accommodations for the immediate purpose of substantially altering, remodeling or demolishing them, and such alterations or remodeling are for the purpose of creating additional housing accommodations for continued use as housing accommodations, or are reasonably necessary to protect and conserve the housing accommodations, provided that the landlord has obtained such approval for the proposed alterations or remodeling and as may be required by law; and provided further that such alterations or

assembly of the commonwealth, and that the city had no police power to enact rent controls. The city appealed in each case.

In determining this question we point out that the facts pleaded by the city by way of new matter set forth that there existed in Philadelphia an emergency housing shortage, affecting the public health, safety and welfare. These facts were well pleaded and on the plaintiffs' motion for judgment they must be taken to be true.

## I.

" 'Under its police power a state or its municipalities may enact statutes and ordinances for the welfare and health of its citizens. Such a statute or ordinance, however, must be reasonable and not arbitrary; must not invade the fundamental liberties of its citizens; . . .' ": *Otto Milk Company v. Rose*, 375 Pa. 18, 25, 99 A. 2d 467. This power has been juridically extended to many fields by social and economic welfare: *Gambone v. Commonwealth*, 375 Pa. 547, 551, 101 A. 2d 634. That rent and eviction controls are not unreasonable or arbitrary, and are valid exercises of this power, is established: *Block v. Hirsh*, 256 U. S. 135; *Marcus Brown Holding Company v. Feldman*, 256

---

remodeling cannot practically be done with the tenant in occupancy; or

(10) The removal or eviction of the character proposed is not inconsistent with the purposes of this ordinance, and would not be likely to result in the circumvention or evasion thereof.

(b) Notice Required. No tenant shall be removed or evicted from any housing accommodation by court processes or otherwise and no action or proceeding shall be commenced for such purpose upon any grounds set forth in Section 5(a) unless and until the landlord shall have given such notice to the Commission and to the tenant as the Commission may determine to be in accordance with the laws of the Commonwealth and to be fair and in the best interests of both landlord and tenant."

U. S. 170; *Teeval Co., Inc. v. Stern,* 301 N. Y. 346, 93
N.E. 2d 884 (certiorari denied, 340 U. S. 876); *Russell v. Treasurer and Receiver General (Mass.),* 120
N.E. 2d 388. The instant ordinance, being admittedly
designed "for the health and welfare of its citizens,"
is a valid exercise of police power. Cf. *Dornan v.
Philadelphia Housing Authority,* 331 Pa. 209, 200 A.
834.

## II.

Appellees contend, however, that the city has no
such power. They argue that it rests only in the legislature, which has not properly delegated or granted to
the city the right to control rents and evictions. But
section 17 of the First Class City Home Rule Act of
1949, P. L. 665, 53 PS §3421.17, provides, inter alia:
"The charter of any city adopted or amended in accordance with this act may provide . . . for the exercise of
*any and all powers* relating to its municipal functions,
not inconsistent with the Constitution of the United
States or of this Commonwealth, *to the full extent that
the General Assembly may legislate in reference thereto . . ., and with like effect, and the city may enact ordinances, rules and regulations necessary and proper for
carrying into execution the foregoing powers and all
other powers vested in the city by the charter it adopts
or by this or any other law."* (Italics supplied). The
city, therefore, may legislate as to municipal functions
as fully as could the General Assembly. By its adoption of the charter (April 17, 1951) the city was then
clothed with police power. This necessarily encompassed authority to enact such ordinances as are for
the health and welfare of its citizens. It is not necessary for its exercise over rents and evictions that they
be specifically enumerated in the Act. Precedent for
this lies in the cases where, under their general police
powers, municipalities have been sustained in the regu-

lation of restaurants, signs, construction and height of buildings, fair employment practices, and other like matters. *Kline v. Harrisburg,* 362 Pa. 438, 68 A. 2d 182, is not controlling. That case involved The Third Class City Law of 1931, P. L. 932, 53 PS §12198-101 et seq., which granted general police powers and also *specifically* granted zoning powers to third class cities. This Court held that the authority of a municipal body must be exercised strictly in the manner provided in the statute; and that the city could impose zoning requirements solely in accordance with the specific provisions of the Act. Cf. Section 63 of the Statutory Construction Act of 1937, P. L. 1019, 46 PS §563.

Contrary to appellees' contention, the pleadings do not establish an improper delegation of judicial power to the Rent Commission. It clearly acts in an *administrative* capacity only, as do zoning boards, and the exercise of these powers is not in violation of Article V, Section 1, of the Constitution.

### III.

Appellees further contend that the ordinance is invalid because it conflicts with The Landlord and Tenant Act of 1951, P. L. 69, 68 PS §250.101. This Act sets up the procedure whereby a landlord may repossess premises if he has a *right* to evict the tenant. The substantive law as to *when* he has a right to evict is not touched upon. The Landlord and Tenant Act is not an exercise of police powers by the state, and hence is not in derogation of the police power of the city.

Indeed, even where both a state statute and a municipal ordinance have legislated as to the same subjects, if they be not in conflict both have been upheld. In *Brazier v. Philadelphia,* 215 Pa. 297, 64 A. 508, a Philadelphia ordinance, prohibiting operation of vehicles in the city without procuring a city license tag, was upheld despite state regulation applicable to the

entire commonwealth. We upheld the right of the City of Pittsburgh to regulate restaurants within its limits even though the state also regulated in regard thereto throughout the commonwealth: *Western Pennsylvania Restaurant Association v. Pittsburgh*, 366 Pa. 374, 77 A. 2d 616. See also *Puntureri v. Pittsburgh*, 170 Pa. Superior Ct. 159, 84 A. 2d 516, where the Superior Court sustained the right of the city to ordain the licensing of liquor establishments and therein to set more stringent requirements than required by the Liquor Control Act of the commonwealth. The theory behind these cases is that peculiar local conditions were such as to permit such regulation.

Unless the statute and the ordinance in question are in conflict because each seeks to impose regulation under the *same* power, i.e. police power, and in like manner and extent, the statute does not invalidate the ordinance merely because both deal with the same subject matter.

As hereinbefore set forth, the Home Rule Act gave the city the power to legislate "to the full extent that the General Assembly may legislate in reference" to these matters. This grant of power, therefore, included the exercise of police power to meet the emergency arising from the housing situation,—that is, to ordain controls upon rents and evictions. These vitally affect the health and welfare of the citizens and thus are proper subjects for the exercise of the power.

We do not here attempt to pass upon the merits of the controversy, but specifically hold that for the reasons stated the decree was in error.

Decree reversed with a procedendo; costs to abide the event.