## Commonwealth v. Barnhardt

*John H. Wood, Jr.,* for Lower Southampton Township.

*Alan D. Williams, Jr.,* for defendant.

SATTERTHWAITE, J., June 7, 1957.—This appeal involves the validity of portions of the disorderly con-

duct ordinance enacted January 16, 1956, by the supervisors of Lower Southampton Township, a township of the second class, insofar as it purports to be applicable to the facts here presented. Although we believe that the better practice would have been to bring this action in the name of the township under section 702 of the Second Class Township Code of May 1, 1933, P. L. 103, as amended, 53 PS §65702, and although it would seem that an appeal from the judgment of the justice of the peace in this type of case should be taken to the court of common pleas, rather than the court of quarter sessions as it was here (see Pleasant Hills Borough v. Carroll, 182 Pa. Superior Ct. 102), nevertheless, these and other possible questions of procedure have not been raised by either side. Since the township was represented by its solicitor at both the hearing and the argument on the appeal, we shall dispose of the case on the merits, disregarding the caption in the name of the Commonwealth and treating it as an action brought on behalf of the township in the form of a summary proceeding to recover the fine or penalty proposed to be authorized by the ordinance in question.

The "information" upon which the within proceedings were based was sworn to by the "prosecutor", Salvatore J. Mirabello, and averred that defendant, at the time and place in question, violated section 1 (a) and (b) of the ordinance in that he "did commit loud, boisterous, profane, vulgar, indecent language and unlawful acts tending to imperil the personal security of Salvatore Mirabello and said defendant did use blasphemous utterances and in a manner so as to annoy the peaceable residents nearby and disturb the peace and tranquility of the neighborhood, said defendant did commit disorderly conduct and breach of the peace by his actions causing alarm, terror, fear,

and by acts likely to produce violence, disturbing the peace and quiet of the public."

The portions of the ordinance so referred to are as follows:

"Section 1. That it shall be unlawful and shall constitute disorderly conduct for any person wilfully:

(a) To be guilty of a breach of the peace, vagrance, disorderly conduct, or to engage in fighting, or to incite others to fight or to engage in any unlawful act tending to imperil the personal security of any person or to endanger or injure property within the Township of Lower Southampton.

(b) To use loud, boisterous, profane, blasphemous, indecent or immoral language upon or near any of the public highways or public places or in a manner so as to annoy residents in the neighborhood, or to make any unseemly noise or disturbance to the annoyance of the residents nearby."

The evidence, both before the justice of the peace as disclosed by his transcript and before the court at the hearing on the appeal, disclosed that the incident in question arose as an aftermath of a conference at the office of a real estate broker between the "prosecutor" and defendant concerning certain problems that had arisen in the proposed construction of a house by the former for the latter. The matters in dispute were not adjusted to defendant's satisfaction, causing him to lose his temper and to heap verbal abuse of a particularly vulgar, obscene and blasphemous nature upon Mirabello, commencing inside the office and continuing outside the same when Mirabello walked out and across the road to his parked car. Defendant followed him outside but remained on the office side of the highway while still persisting in his vituperations in such a loud tone as to be heard by those still inside the office as well as by the "prosecutor" across the

road near a drive-in custard stand at which patrons were also present. Mirabello drove away, but later called the police, returned to the scene, and instituted these proceedings when the police officer answered the call.

There would seem to be no question under this evidence but that defendant's vile language and the loud and public manner in which he hurled these vilifications at Mirabello across the highway were by their very nature annoying and disturbing to the public peace. As such, they constituted a literal violation of section 406 of the Penal Code of June 24, 1939, P. L. 872, 18 PS §4406, which makes it a summary offense, prohibited by the Commonwealth and subject to a fine of $10, to make "any loud, boisterous and unseemly noise or disturbance to the annoyance of the peaceable residents near by, or near to any public highway, . . . whereby the public peace is broken or disturbed or the traveling public annoyed. . . ." The within factual situation is quite similar to that considered and held sufficient to justify a conviction under this provision of The Penal Code in Commonwealth ex rel. Jenkins v. Costello, 141 Pa. Superior Ct. 183. Compare Commonwealth v. Brenneman, 172 Pa. Superior Ct. 198, 199.

Defendant, however, was not prosecuted under this section, and contends that the ordinance, providing for a penalty in favor of the township not to exceed $100 (which maximum was here assessed against him), was beyond the power of the township to enact. It is undoubtedly true, as he argues, that any municipal corporation has only such powers as have been expressly granted it by the legislature, or those necessarily or fairly implicit in or incidental thereto, or those essential to its declared objects and purposes, and also that second class townships, having no general grant of police powers as do other types of munici-

palities, are particularly limited in their legislative authority: In re Falls Township Trailer Ordinance, 84 D. & C. 199, 202-203, and the precedents therein cited. It is also undoubtedly true, as a specific application of these principles, that a municipality does not have any power to define and punish disorderly conduct in its own right, whether or not such definition goes beyond the scope of The Penal Code, unless the authority to do so has been clearly conferred upon it by the legislature: Borough of New Wilmington v. Boyd, 10 Mun. L. R. 202; Commonwealth v. Zima, 31 Northamp. 333; City of Johnstown v. Troutman, 60 D. & C. 1; Commonwealth ex rel. v. Klein, 73 D. & C. 470; Commonwealth v. Bilek, 45 Berks 147.

The township solicitor contends, however, that there is specific and express authority for the within ordinance under section 702 of the Second Class Township Code, as added by the Act of May 24, 1951, P. L. 370, and amended by the Act of July 2, 1953, P. L. 354, sec. 10, 53 PS §65747 which provides as follows:

"XLVII. Public Safety.—To take all needful means for securing the safety of persons or property within the township, *including the control of disorderly practices*." (Italicized phrase added by the 1953 amendment.)

The problem thus narrows down to a determination of the effect and construction of this statutory provision.

The various types of municipalities have had statutory powers relative to disorderly conduct for varying periods of time. No reference to the subject was made insofar as townships of the second class were concerned until the act of 1953, supra. Boroughs, on the other hand, have had authority since 1921 "To adopt ordinances defining disorderly conduct within the limits of a borough, and to provide in such ordinances

for the imposition of penalties for the violation thereof" Act of May 16, 1921, P. L. 581, now incorporated into clause LV of section 1202 of The General Borough Act of May 4, 1927, P. L. 519, as amended, 53 PS §46255 a further phrase having been added thereto July 10, 1947, P. L. 1621: "Notwithstanding like statutes pertaining to the same or similar offenses." In 1931, townships of the first class were empowered "To define and prohibit disorderly practices within the limits of the township": Clause IX of section 1502 of The First Class Township Law of June 24, 1931, P. L. 1206, as amended, 53 PS §56509, and such provision continues unchanged. Although there were earlier statutory provisions which were construed by one court to confer the power (Commonwealth v. Guth, 31 Erie 210), it was not until 1947 that cities of the third class were expressly authorized "To define disorderly conduct within the limits of the city and to provide for the imposition of penalties for the violation thereof": Act of June 10, 1947, P. L. 494, now incorporated in clause 55 of section 2403 of The Third Class City Code, 53 PS §37403, with the further phrase added thereto in 1951: "notwithstanding any statutes of the Commonwealth upon disorderly conduct and the penalties therefor."

It is well established that the legislature may delegate to municipalities the power to regulate and control local matters even though the broad general field also be subject to State regulation, so long as there be no actual conflict and both do not operate in exactly the same manner and to the same extent: Warren v. Philadelphia, 382 Pa. 380, 385-386. Accordingly, under the various statutory grants of power to define and prohibit disorderly conduct just noted, the right of the several types of municipality so authorized to define and penalize undesirable practices, other than the technical offense of disorderly conduct itself as

established by section 406 of The Penal Code and the identical predecessor legislation on the same subject originating in the Act of June 25, 1895, P. L. 271, has usually been sustained. Thus, in City of Pittston v. Volpe, 28 Luz. 38, a summary conviction under an ordinance for the suppression of disorderly acts, conduct and practices, which made it unlawful, inter alia, to engage in fighting, brawling or riotous conduct, was sustained on the basis that the conduct prohibited by that part of the ordinance was not identical to but went beyond the definition of disorderly conduct in the State statute. So, too, in Commonwealth v. Savko, 76 D. & C. 310, and Commonwealth v. Schwartz, 83 D. & C. 319, convictions under similar ordinances were upheld where the violations consisted of unseemly, although not noisily disturbing, altercations with police officers directing traffic. President Judge Knight in the latter case summarized the considerations involved, at page 322, as follows:

"It will be seen that to constitute disorderly conduct under the act the making of a loud, etc., noise or disturbance is necessary while under the ordinance *acting* in an unseemly manner or in such manner as to disturb the peace either with or without noise constitutes the offense.

"We are therefore of the opinion that the ordinance is broader in its coverage than the act and that the two do not cover exactly the same subjects."

These and possibly other similar decisions, however, do not control the within decision inasmuch as the conduct of defendant in the instant case would, as already noted, come squarely within the interdiction of section 406 of The Penal Code. Notwithstanding that there may be a conflict among the authorities on the subject (Commonwealth v. Schwartz, supra), we believe that, at least in the absence of a specific and

unequivocal statutory authorization therefor, a local municipality should not be considered as empowered to arrogate unto itself the State's exercise of police powers as specified in The Penal Code. Particularly should this be true where a second class township is involved, since it is authorized in this connection only to "take all *needful* means for securing the safety of persons or property within the township, including the *control* of disorderly practices." (Italics supplied.) Disregarding and leaving for future decision the question of whether or not this language empowers a second class township to set up its own definition of disorderly conduct in elaboration of and advance upon the statutory concept thereof, as do the comparable legislative provisions applicable to other classes of municipalities above mentioned, we believe it to be obvious that it is not "needful" in the interests of public safety for a township itself to make unlawful that which is already unlawful under the State law. Disorderly conduct can just as well be "controlled" by seeing to the proper enforcement of existing and applicable legal principles of the State as it can be by purporting to exercise a new and complicating parallel autonomy merely in duplication thereof except for a confusing and conflicting penalty.

Moreover, even disregarding the limitations inherent in the language of The Second Class Township Code, and considering the matter as though plaintiff township did have the same power to define and prohibit disorderly conduct or practices as would a township of the first class, we are inclined to agree with those decisions of other courts of the State which have held that such is insufficient, at least standing alone, to justify a municipal subdivision in itself attempting to penalize the identical offense of disorderly conduct, or any other offense which is already punishable under The Penal Code, other relevant statute, or the common

law: Borough of Shippensburg v. Schock, 1 Mun. L. R. 77 (health regulation) ; Commonweatlh v. Jones, 16 Mun. L. R. 102 (gambling devices) ; Commonwealth ex rel. Yasankaitis v. Warden of County Jail, 17 Mun. L. R. 33 (disorderly conduct) ; Commonwealth v. Burke, 17 Mun. L. R. 250 (gambling devices) ; Borough of New Kensington v. Davis, 11 Westmoreland 83 (disorderly house) ; Tea v. New Brighton Borough, 4 D. & C. 434 (traffic in intoxicating liquor) ; Campbell v. Commonwealth, 43 D. & C. 123 (disorderly house). See, contra, Commonweatlh v. Guth, 31 Erie 210 (disorderly conduct).

In conclusion, we note parenthetically that we have left entirely out of present consideration the provisions of The Borough Code, added in 1947, and of The Third Class City Code, added in 1951, both quoted above, which couple the power of the municipality with an express reference to the disorderly conduct statute, except to point out the complete absence of any such provision in The Second Class Township Code. What the possible effect of that additional reference may be upon the instant problem is expressly reserved since it is not now before us. In this connection, see Harrisburg v. Gable, 7 D. & C. 2d 34, where the question was involved.

For the foregoing reasons we believe that the ordinance of Lower Southampton Township is invalid and ineffectual insofar as it purports to apply to the conduct in which defendant engaged in the instant case. Accordingly, the penalty assessed against him was improper and should be set aside.

And now, June 7, 1957, defendant is adjudged not guilty; the judgment of the justice of the peace is reversed and restitution of the fine and costs paid is ordered, costs to be paid by the Township of Lower Southampton.