**BERWICK AREA LANDLORD ASSOCIATION and Pennsylvania Residential Owners Association, Appellants**

v.

**BOROUGH OF BERWICK.**

Commonwealth Court of Pennsylvania.

Argued May 15, 2012.

Decided June 27, 2012.

Paul J. Toner, Media, for appellants.

Steven K. Ludwig, Philadelphia, for appellee.

BEFORE: LEADBETTER, Judge, and LEAVITT, Judge, and COLINS, Senior Judge.

OPINION BY Senior Judge COLINS.

This case involves a challenge to the legality of the Landlord Registration Ordinance, No.2007–01 (Ordinance), of the Borough of Berwick, Columbia County (Borough). The Berwick Area Landlord Association and the Pennsylvania Residential Owners Association (collectively, Appellants) filed a declaratory judgment action in the Court of Common Pleas of the 26th Judicial District, Columbia County branch (trial court), seeking to have the entire Ordinance declared invalid. Appellants claimed that (i) the Ordinance is preempted by Pennsylvania statutes, (ii) the Ordinance is *ultra vires* because the Borough Code does not authorize it, and (iii) the Ordinance violates substantive due process rights under Article I, Section 1, of the Pennsylvania Constitution.

The trial court dismissed several counts upon the Borough's preliminary objections, and, on March 30, 2011, issued a decision and order granting in part and denying in part Appellants' motion for summary judgment, thereby resolving the remaining counts. The trial court ruled that (i) the Ordinance is not preempted, (ii) it is authorized by the Borough Code, and (iii) it did not violate substantive due process. The trial court also struck two provisions of the Ordinance that it considered to be ambiguous and to impose obligations on landlords that are inconsistent with existing Pennsylvania law.

On appeal to this Court, Appellants claim that the trial court committed legal error and that the Ordinance must be stricken in its entirety, raising similar arguments made before the trial court. The Borough does not appeal the trial court's decision to strike two provisions of the Ordinance and, as such, our review of the Ordinance is without the stricken provisions. We have jurisdiction under Rules of Appellate Procedure 341(b)(1) and (b)(2).[1]

## I. *Background*

The Ordinance regulates residential rental units. It was enacted in April 2007 and became effective on April 21, 2008. In summary, it provides that rental units must be licensed, maintained, and regis-

1. Under Rule of Appellate Procedure 341(a), an appeal may be taken as of right from any final order of a lower court. Rule 341(b)(1) defines a final order as any order that "disposes of all claims and of all parties." Rule 341(b)(2) defines a final order as any order that "is expressly defined as a final order by statute." Here, the Declaratory Judgments Act expressly provides: "The declaration may be either affirmative or negative in form and effect, and such declarations shall have the force and effect of a final judgment or decree." 42 Pa.C.S. § 7532; *Nationwide Mutual Ins. Co. v. Wickett*, 563 Pa. 595, 763 A.2d 813 (2000). The notes to Rule 341 provide: "In an action taken pursuant to the Declaratory Judgments Act, 42 Pa.C.S. §§ 7531–7541, orders based on a pre-trial motion or petition are considered 'final' within the meaning of this Rule, under subdivision (b)(2), if they affirmatively or negatively declare the rights of the parties." Pa. R.A.P. 341, notes (citing *Wickett*). Here, the trial court's March 30, 2011, decision and order declared the parties' rights under the Act and also resolved all claims of all parties pending before the court. Accordingly, the order is appealable.

tered, and are subject to inspection by the Borough. The Ordinance provides specific "Owner's Duties" and "Occupant Duties," as discussed below.[2] The Ordinance creates enforcement and due process mechanisms for violations of the Ordinance. The Ordinance provides for fines that may be levied against landlords or tenants for violations of specific provisions. And the Ordinance provides for "disciplinary action" against landlords in the form of warnings, non-renewal, suspension, or revocation of the rental license.[3]

## A. General Provisions of the Ordinance

The Ordinance states its purpose as follows:

> It is the purpose of this Ordinance and the policy of the Council of the Borough of Berwick, in order to protect and promote the public health, safety and welfare of its citizens, to establish rights and obligations of owners and occupants relating to the rental of certain residential rental units in the Borough of Berwick and to encourage owners and occupants to maintain and improve the quality of rental housing within the community. **It is also the policy of the Borough that owners, managers and occupants share responsibilities to obey the various codes adopted to protect and promote public health, safety and welfare.** As a means to those ends, this Ordinance provides for a system of inspections, issuance and renewal of occupancy licenses and sets penalties for violations. This Ordinance shall be liberally construed and applied

to promote its purposes and policies . . . .

Ordinance § 141.2 (emphasis added).

The Borough's findings to support the Ordinance are:

> In recent years, many formerly private homes have been turned into residential rental units. Those rental units have oftentimes been rented to individuals who, because they have no ownership interest in the property, have allowed the properties to deteriorate. In many cases, the owners of the properties live long distances from the Borough of Berwick. As a result, property maintenance of many rental units in the Borough of Berwick has been somewhat lax. In addition, problems have occurred because many tenants, because they have no ownership interest in the real estate, have not been concerned about following Codes of the Borough of Berwick, including Codes which govern maintenance and safety of the property. This, in turn, has caused problems for other home owners near the rental units. In addition, there is a greater incidence of violation of various Codes of the Borough of Berwick in residential rental properties where owners rent properties to tenants. Estimates are that over 75% of all code violations in the Borough of Berwick occur in tenant occupied structures.

Ordinance § 141.2.

The Borough's commentary to this section provides:

> Regulating the conduct and activities of tenants within the unit. Simply put, if

---

**2.** The Ordinance defines "landlord" as the "same as owner" and it defines "tenant" as the "same as occupant." Ordinance § 141.3 Definitions.

**3.** The Ordinance is long and detailed. We include here those provisions necessary to provide an overview of the Ordinance and those provisions that Appellants contend are most problematic, based on their legal arguments. The entire Ordinance is available on the Borough's website at http://www.berwick borough.org/.

you are made aware that your tenants and their guests have conducted themselves inappropriately, **you are expected to correct this.** We understand that you are not a babysitter and can't control their every move, however, if you are formally informed by our Codes Department that your tenants have violated this Ordinance or another Ordinance of the Borough of Berwick, you are expected to take corrective action. Remember, this is your property and you are the one ultimately represented. Later in the review, we will discuss how this process will work.

Review of Ordinance No.2007–01, April 15, 2007 (hereinafter the "Review"), at 1, R.R. at 60a (emphasis added).

### B. *Owner's Duties*

"Owner's Duties" are to "keep and maintain all rental units in compliance with all applicable State laws and regulations and local ordinances." In addition:

> As provided for in this Ordinance, every owner shall also be responsible for regulating the conduct and activities of the occupants of every rental unit which he, she or it owns in the Borough of Berwick, which conduct or activity takes place at such rental unit or its premises. In order to achieve those ends, every owner of a rental unit shall regulate the conduct and activity of the occupants thereof, both contractually and through enforcement, as more fully set forth below.

Ordinance § 141.4.1.

This section also limits and explains an Owner's duties under the Ordinance as follows:

> This Section shall not be construed as diminishing or relieving, in any way, the responsibility of occupants or their guests for their conduct or activity, nor shall it be construed as an assignment, transfer or projection over or onto any owner of any responsibility or liability which occupants or their guest may have as a result of their conduct or activity under any private cause of action, civil or criminal enforcement proceeding, or criminal law; nor shall this Section be construed so as to require an owner to indemnify or defend occupants or their guests when any such action or proceeding is brought against the occupant based upon the occupant's conduct or activity. **Nothing herein is intended to impose any additional civil/criminal liability upon owners other than that which is imposed by existing law.** This Ordinance is not intended to, nor shall its effect be, to limit any other enforcement remedies which may be available to the Borough of Berwick against an owner, occupant or guest thereof.

Ordinance § 141.4.1 (emphasis added).

Other subsections of the "Owner's Duties" require landlords to designate a manager if they live more than 15 miles away from the Borough; to maintain the rental property; to use a written rental agreement that contains certain, specified terms required by the Ordinance regarding tenants' obligations; to register with the Borough's designated "Code Enforcement Officer;" to comply with all provisions of the Landlord Tenant Act; and to register the names of their tenants. Ordinance § 141.4; Appendix A to the Ordinance, Tenant's Covenants and Obligations.

### C. *Occupant Duties*

The "Occupant Duties" imposed by the Ordinance expressly include complying with "all applicable codes and ordinances of the Borough of Berwick and all applicable provisions of State Law." Ordinance § 141.5.1. "Occupant Duties" also creates

obligations on occupants not to engage in certain activity:

3. Peaceful Enjoyment. The occupant shall conduct himself or herself and require other persons including, but not limited to, guests on the premises and within his or her rental unit with his or her consent, to conduct themselves in a manner that will not disturb the peaceful enjoyment of the premises by others, and that will not disturb the peaceful enjoyment of adjacent or nearby dwellings by the persons occupying same.

. . .

5. Illegal Activities. The occupant shall not engage in, nor tolerate, nor permit others on the premises to engage in, any conduct declared illegal under the Pennsylvania Crimes Code . . . or Liquor Code . . . or the Controlled Substance, Drug, Device and Cosmetic Act. . . .

. . .

11. Disruptive Conduct. It shall be a violation of this Ordinance for any occupant or any other person to engage in disruptive conduct as defined by this Ordinance.

Ordinance § 141.5.

The Ordinance defines "Disruptive Conduct" as follows:

DISRUPTIVE CONDUCT—any form of conduct, action, incident or behavior perpetrated, caused or permitted by any occupant or visitor of a residential rental unit that is so loud, untimely (as to hour of the day), offensive, riotous or that otherwise disturbs other persons of reasonable sensibility in their peaceful enjoyment of their premises such that a report is made to police and/or to the Code Enforcement Officer complaining of such conduct, action, incident or behavior. It is not necessary that such conduct, action, incident or behavior constitute a criminal offense, nor that crimi-

nal charges be filed against any person in order for a person to have perpetrated, caused or permitted the commission of disruptive conduct, as defined herein. Provided, however, that no disruptive conduct shall be deemed to have occurred unless the Code Enforcement Officer or police shall investigate and make a determination that such did occur, and keep written records, including a Disruptive Conduct Report, of such occurrence.

Ordinance § 141.3.

At his deposition, Borough Manager Shane M. Pepe described what he considered "unreasonable noise" as it relates to disruptive conduct: "We have a noise ordinance in the Borough of Berwick that our Police Department enforces. If it's in violation of that, or if it is affecting the general well-being of the person that is living within the same structure and they cannot function their life properly because of the disruptive noise next door, I believe that's unreasonable noise." (Deposition of Shane M. Pepe (Pepe Dep.) at 43, Ex. 2 to Appellants' Mot. for Summ. J., R.R. at 57a.)

The Ordinance describes the procedure whereby the police or a Borough-designated "Code Enforcement Officer" will investigate and create a report on tenant disruptive conduct:

6. Disruptive Conduct.

A. The occupant shall not engage in, nor tolerate, nor permit others on the premises to engage in, disruptive conduct or other violations of this Ordinance.

B. When police or the Code Enforcement Officer investigate an alleged incident of disruptive conduct, **he or she shall complete a disruptive conduct report upon a finding that the reported incident did, in his or her judgment, constitute disruptive conduct as**

**defined herein.** The information filled in on said report shall include, if possible, the identity or identities of the alleged perpetrator(s) of the disruptive conduct and all other obtainable information including the factual basis for the disruptive conduct requested on the prescribed from [sic]. Where the police make such investigation, said police officer shall then submit the completed disruptive conduct report to the Code Enforcement Officer. In all cases, the Code Enforcement Officer shall mail a copy of the disruptive conduct report to the owner or manager within three (3) working days of the occurrence of the alleged disruptive conduct, whether the person making the investigation on behalf of the Borough is the Code Enforcement Officer or police.

Ordinance § 141.5.6 (emphasis added).

Tenants must also abide by a list of covenants and obligations that landlords must now include in all leases. *See* Appendix A to the Ordinance, "Tenant's Covenants and Obligations."

## D. *Enforcement*

### 1. *Penalties*

The Ordinance imposes monetary fines that it refers to as "Penalties." The Ordinance creates fines that may be assessed against an Owner when that Owner violates specific provisions of the "Owner's Duties," or against an Occupant when that Occupant violates specific provisions of the "Occupant Duties." Ordinance § 141.9(C). Importantly, a careful reading of the Penalties subsection shows that the Ordinance does not provide that a landlord may be *fined* for the conduct of his tenants. As explained in the next section, a landlord may be sanctioned in other ways for not adequately responding to a tenant's conduct.

### 2. *Disciplinary Action*

The Ordinance refers to the formal warning, non-renewal, suspension, or revocation of a landlord's license as "Discipline":

1. General. The Code Enforcement Officer may initiate disciplinary action against an owner that may result in a formal warning, non-renewal, suspension or revocation of the owner's license, for violating any provision of this Ordinance that imposes a duty upon the owner **and/or for failing to regulate the breach by occupants as provided for herein.**

Ordinance § 141.7.1 (emphasis added). A "formal warning" may be issued upon at least one violation of the Ordinance. Ordinance § 141.7.1(A). Licenses are per rental unit, so a landlord can have a license suspended for one unit, but still rent other units.

The Ordinance specifies eight criteria that must be considered before "Discipline" may be applied. Ordinance § 141.7.2(A)-(H). In addition, the Ordinance specifies seven grounds for imposing "Discipline":

3. Grounds for Imposing Discipline. Any of the following may subject an owner to discipline as provided for in this Ordinance:

A. Failure to abate a violation of Borough codes and ordinances that apply to the premises within the time directed by the Code Enforcement Officer.

B. Refusal to permit the inspection of the premises by the Code Enforcement Officer as required by this Ordinance.

C. **Failure to take steps to remedy and prevent violations of this Ordinance by occupants of residential rental units as required by this Ordinance.**

D. Failure to file and implement an approved plan to remedy and prevent violations of this Ordinance by occupants of the rental unit as required by this Ordinance.

E. Failure to evict occupants after having been directed to do so by the Code Enforcement Officer of the Borough as provided for in this Ordinance.[4]

F. Three (3) violations of this Ordinance or other ordinances of the Borough that apply to the premises within a license term. For purposes of this Ordinance, there need be no criminal conviction before a violation can be found to exist. Before a prior violation can be considered under this Section, the owner must have received notice in writing of this violation within thirty (30) days after the Code Enforcement Officer received notice of the violation.

Ordinance § 141.7.3 (emphasis added).

To summarize, a landlord may be "disciplined" by the non-renewal of his rental license if, for example, (1) a tenant commits "disruptive conduct," (2) the landlord is given proper notice of the disruptive conduct, and (3) the landlord fails "to take steps to remedy and prevent" future violations by the tenant.

### 3. *Notice and Due Process*

The Ordinance specifies procedures for notice, a hearing, and an appeal for landlords and tenants regarding penalties (*i.e.,* fines) and disciplinary action (*i.e.,* warnings, non-renewals, suspensions, and license revocation), pursuant to the Local

Agency Law, 2 Pa.C.S. §§ 751–754. Ordinance §§ 141.4.10; 141.4.15; 141.7.7.[5]

The Ordinance does not describe what preventative steps may be considered reasonable or effective for a landlord to take in response to notice of a tenant's disruptive conduct. However, the Borough Manager provided guidance at his deposition regarding how the Borough might enforce the Ordinance. In response to a notice of disruptive conduct, the Manager said that "the landlord should notify the tenants that they have certain expectations of the way that they behave inside of the property in which the landlord owns. . . . What I would tell [the landlord] to do is I would write a letter to the tenants saying that if their behavior continues, then we no longer would like them to be in our home. . . . That's all I can expect." (Pepe Dep. at 32–33, R.R. at 54a.) He also testified that a landlord cannot "insure that there is not a recurrence" of the disruptive conduct. (Pepe Dep. at 35, R.R. at 55a.)

### E. *Stricken Provisions*

The trial court struck two portions of the Ordinance. Trial Ct. Op. at 19. First, from the Owner's Duties section, the trial court struck the following subsection:

9. Common Areas. Where an owner of a residential rental unit does not regulate the use of common areas and the behavior of occupants and guests in the common areas, **the owner shall be directly responsible for the behavior of occupants and guests in the common areas as if the owner were an occupant.** The failure of the owner to regu-

---

4. The Ordinance expressly provides that evictions must be conducted in accordance with the Landlord Tenant Act. Ordinance § 141.4.10(D).

5. Appellants do not assert a procedural due process challenge to the Ordinance. In denying Appellants' claims to declare the entire

Ordinance null and void, the trial court chastised Appellants for giving only "cursory attention" to the due process provisions, which the trial court found would "assure fair implementation of the Ordinance." Trial Ct. Op. at 20.

late behavior of occupants and guests in the common areas that results in the following shall be a violation of this Ordinance:

 A. Engaging in fighting, threatening or other violent or tumultuous behavior;

 B. Making unreasonable noise; or,

 C. Creating a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

Ordinance § 141.4.9 (stricken by trial court) (emphasis added).

The trial court also struck the following subsection from the Enforcement provision:

 H. The owner of all residential rental units in the Borough of Berwick shall have the responsibility of making sure that all occupants within their rental units comply with and abide by this ordinance of the Borough of Berwick.

Ordinance § 141.9(H) (stricken by trial court).

Regarding the two stricken provisions, the trial court concluded that: "Unfortunately, this language has understandably unnerved Landlords. The Ordinance states that they stand in the shoes of their tenants. They do not. Landlords are responsible for maintaining their properties and assuring that their tenants are not repeatedly disruptive." Trial Ct. Op. at 19.

## II. *Discussion*

### A. *"Facial" vs. "As Applied" Challenge*

 ■ Appellants first contend that the trial court erred because it treated their claims as a "facial" challenge to the Ordinance rather than an "as applied" challenge. Appellants' challenge to the Ordinance is facial. Other than the Ordinance itself, Appellants submitted the following evidence to the trial court: (i) eleven letters from the Borough Code Enforcement Officer to individual landlords notifying the landlords of disruptive conduct by tenants; (ii) the deposition testimony of the Borough Manager explaining some Ordinance provisions; and (iii) the Borough Manager's "Review" document, in which he provides commentary to some Ordinance provisions. The record does not contain evidence of any specific civil or criminal penalties against any landlord; a warning, suspension, non-renewal, or revocation of any landlord license; or the imposition of any specific penalties by the Borough. Borough Manager Pepe testified that no landlord licenses have been revoked under the Ordinance. (Pepe Dep. at 44, R.R. at 57a.) Thus, even though Appellants argue on appeal that they made an "as applied" challenge to the Ordinance, there is no application of the Ordinance for this Court, or the court below, to review.

Further, even if the notices of disruptive conduct that are part of the record could form the basis of an "as applied" challenge, the individual landlords who received the notices are not parties to this case.[6] Thus, Appellants would not have standing to make an "as applied" challenge, even if they had made one. *See, e.g., Pennell v. City of San Jose,* 485 U.S. 1, 6–8, 108 S.Ct. 849, 99 L.Ed.2d 1 (1988) (permitting facial challenge to city ordinance to proceed, noting that "as applied" challenge was unripe

---

6. For example, the Borough's notice of November 13, 2009, was sent to Gordon Bilby. (R.R. at 69a.) Mr. Bilby is not a party to these proceedings nor is there any evidence or allegation that he is a member of the two trade associations that are parties. *See Warth v. Seldin,* 422 U.S. 490, 515–16, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Building Industry Ass'n of Lancaster County v. Manheim Twp.,* 710 A.2d 141, 146 (Pa.Cmwlth.1998) (discussing standing requirements for organization to bring claims of its members).

because of lack of record and because no litigant had actually been adversely affected by the ordinance, even though it was clear that they could be eventually); *Phila. Entertainment and Development Partners, L.P. v. City of Phila.*, 594 Pa. 468, 937 A.2d 385 (2007) (dismissing "as applied" challenge to city zoning ordinance as unripe because plaintiffs had not yet been affected, despite presence of some evidence from city officials regarding how ordinance would be applied).

### B. Preemption by the Pennsylvania Landlord Tenant Act

 Appellants next argue that the trial court erred by finding the Ordinance is not preempted by the Pennsylvania Landlord Tenant Act of 1951.[7] Our Supreme Court recently explained that there are three closely related forms of state preemption of local lawmaking authority. *Holt's Cigar Co., Inc. v. City of Philadelphia*, 608 Pa. 146, 153–155, 10 A.3d 902, 907–908 (2011). In express preemption, "a statute specifically declares it has planted the flag of preemption in a field." *Id.* In field preemption, a "statute is silent on supersession, but proclaims a course of regulation and control which brooks no municipal intervention." *Id.* Finally, pursuant to the doctrine of conflict preemption, a local ordinance that contradicts, contravenes, or is inconsistent with a state statute is invalid. *Id.* (citing cases).

 The legislature is not presumed to have preempted a field merely by legislating in it. *Council of Middletown Twp. v. Benham*, 514 Pa. 176, 181, 523 A.2d 311, 313–14 (1987). The General Assembly must clearly show its intent to preempt a field in which it has legislated. *Id.* Either the statute must state on its face that local legislation is forbidden, or "indicate an intention on the part of the legislature that it should not be supplemented by municipal bodies." *Id.* If the General Assembly has preempted a field, the state has retained all regulatory and legislative power for itself and no local legislation is permitted. *Id.*

 For conflict preemption to be applicable, the conflict between the statute and the ordinance must be irreconcilable. *Holt's Cigar Co.*, 608 Pa. at 153–155, 10 A.3d at 907–908. The ordinance in question must be considered in light of the objectives of the General Assembly and the purposes of the relevant statute; a local ordinance may not stand as an obstacle to the execution of the full purposes and objectives of the Legislature. *Id.* But "it has long been the established general rule, in determining whether a conflict exists between a general and local law, that where the legislature has assumed to regulate a given course of conduct by prohibitory enactments, a municipal corporation with subordinate power to act in the matter may make such additional regulations in aid and furtherance of the purpose of the general law as may seem appropriate to the necessities of the particular locality and which are not in themselves unreasonable." *Id.* (quoting *Mars Emergency Medical Services, Inc. v. Township of Adams*, 559 Pa. 309, 313–14, 740 A.2d 193, 195 (1999)).

Here, express and field preemption do not apply. The Landlord Tenant Act does not state on its face that local legislation is forbidden. And there is no indication that municipalities must not supplement the area. In *Warren v. City of Philadelphia*, 382 Pa. 380, 385–86, 115 A.2d 218, 221 (1955), our Supreme Court held that local municipalities may enact, pursuant to their police powers, laws affecting the land-

---

7. Act of April 6, 1951, P.L. 69, *as amended*, 68 P.S. §§ 250.101–397.

lord/tenant relationship, as long as those local laws do not directly conflict with the Landlord Tenant Act. *See also Commonwealth v. Tobin*, 828 A.2d 415, 422 (Pa. Cmwlth.), *appeal denied*, 576 Pa. 726, 841 A.2d 533 (2003) (holding that Act does not provide pervasive regulatory framework for residential rental property). Thus, the only potentially viable preemption claim at issue here is conflict preemption, *i.e.*, that the Ordinance contains irreconcilable differences from the Landlord Tenant Act.

■ Appellants' claim that the Ordinance conflicts with the Landlord Tenant Act is premised on their assertion that "the overriding purpose of the [Ordinance] is to impose a legal duty upon all 'owners' of residential rental properties to control the behavior of tenant occupants and guests thereof; and, correspondingly, imposes [sic] liability upon those owners for the actions of a tenant and his guests unrelated to the demised premises." (Appellants' Br. at 20.) Contrary to this assertion, however, the Ordinance does not impose "liability" on owners or landlords for the acts of their tenants and tenants' guests, as is clearly demonstrated by the language of the Ordinance and the interplay among its various provisions.

First, the Ordinance expressly provides that it "shall" not be construed "as an assignment, transfer or projection ... onto any owner or any responsibility or liability which occupants or their guests may have as a result of their conduct or activity under any private cause of action, civil or criminal enforcement proceeding, or criminal law." Ordinance § 141.4.1. The Ordinance also expressly provides that **"[n]othing herein is intended to impose any additional civil/criminal liability upon owners other than that which is imposed by existing law."** *Id.* (emphasis added). The Ordinance imposes no new liability on owners separate and apart

from the way that an owner conducts his business as a landlord of residential rental units.

Second, rather than imputing liability to landlords for the behavior of their tenants, the Ordinance requires landlords to take affirmative steps toward preventing tenants' disruptive conduct. The Ordinance does not require landlords to absolutely prevent bad behavior; however, they must take reasonable steps to attempt to prevent it. If landlords fail to take reasonable steps, like informing their tenants in a letter that disruptive conduct is prohibited and that there will be consequences for repeated offenses, then the Borough may penalize or discipline landlords with fines or the non-renewal of their rental license. If a tenant does not heed the landlord's reasonable attempts to control the tenant's disruptive behavior, the Borough may direct the landlord to commence eviction proceedings pursuant to the Landlord Tenant Act. That is a far cry from Appellants' argument that the Ordinance has "legislated the assumption of liability." (Appellants' Br. at 20.) Under no circumstances under the Ordinance does a landlord assume liability for a tenant's disruptive conduct.

Third, Appellants misapprehend how they may be penalized or disciplined under the Ordinance. A careful reading of Section 141.9(C), Enforcement, dealing with monetary fines, reveals that the Borough may fine an occupant (*i.e.*, a tenant) for violations of "Occupant Duties," as those are set forth in Section 141.5. Thus, monetary fines for a tenant's disruptive conduct, defined within Section 141.5 of the Ordinance, may be levied only against the tenants. As described above, the Borough may take "disciplinary action" against a landlord, (*i.e.*, warnings, suspension, non-renewal, or revocation of the rental license) if the landlord fails to take reason-

able steps to curtail a tenant's disruptive conduct. Thus, the "new duties" complained of by Appellants may involve nothing more than writing a letter to an unruly tenant or commencing eviction proceedings under the Landlord Tenant Act. Notwithstanding Appellants' fears, the Ordinance does not create a direct line from a tenant's conduct to an owner's liability.

Appellants also argue that the Ordinance conflicts with the Landlord Tenant Act in two respects: (1) the Ordinance imposes on landlords an obligation to forcibly evict tenants for reasons that violate the Landlord Tenant Act and (2) the Ordinance forces landlords to breach their tenants' statutory right to "quiet enjoyment" of their rental homes found in Section 503–A of the Act. (Appellants' Br. at 22–30.)

First, the Ordinance does not compel owners to evict tenants in violation of the Landlord Tenant Act. In fact, the Ordinance expressly provides that evictions must be conducted in accordance with the Landlord Tenant Act. Ordinance § 141.4.10(D). Further, the Landlord Tenant Act sets forth procedures for eviction, but does not address all of the factual or substantive legal scenarios that may trigger a landlord's right to evict. *See* Landlord Tenant Act § 501, 68 P.S. § 250.501; *Warren*, 382 Pa. at 385–86, 115 A.2d at 221. Thus, there is no reason to conclude that the Ordinance empowers the Borough to compel landlords to commence and conduct eviction proceedings in a manner that would violate the Landlord Tenant Act.

Second, Appellants contend that the Ordinance inappropriately places a duty on them to control the behavior of tenants' guests, where the Act places that duty with tenants in Section 503–A, as part of a tenant's right to "quiet enjoyment":

> The tenant shall comply with obligations imposed upon tenants by applicable [laws, ordinances, and regulations] ... and in particular shall:
>
> (1) Not permit any person on the premises with his permission to willfully or wantonly destroy, deface, damage, impair, or remove any part of the structure or dwelling unit, or the facilities, equipment, or appurtenances thereto or used in common, nor himself do any such thing.
>
> (2) Not permit any person on the premises with his permission to willfully or wantonly disturb the peaceful enjoyment of the premises by other tenants and neighbors.

68 P.S. § 250.503–A.

Nothing in the Ordinance conflicts with this provision. The Ordinance does not eliminate the tenants' duties set forth therein. Moreover, as explained above, the Ordinance does not impute liability to landlords for the behavior of their tenants or their tenants' guests.[8]

### C. *Preemption by the Pennsylvania Crimes Code*

■ Appellants next argue that the penalties in the Ordinance are preempted by, and unlawfully expand upon codified

---

**8.** Appellants repeatedly cite in their brief, out of context, a single phrase from *Kapres v. Heller*, 417 Pa.Super. 371, 612 A.2d 987, 991 (1992): "There is no Pennsylvania law which makes it incumbent upon landlords to police the activities, legal or otherwise, of their tenants." That case dealt with social host liability (serving alcohol to guests), specifically holding that adult landlords are not civilly liable for underage drinking that occurs on their property, unless they knowingly furnish the alcohol. *Kapres* has nothing to do with the exercise of a borough's police power. Further, the Ordinance here does not impose liability on landlords for the underage drinking of their tenants' and tenants' guests.

crimes in, the Pennsylvania Crimes Code.[9] Specifically, Appellants argue that the Crimes Code contains "express limitations on the imposition of vicarious criminal liability." (Appellants' Br. at 66 (citing 18 Pa.C.S. §§ 102, 301 (providing for vicarious liability in certain, specific circumstances)).) This argument fails.

As explained above, the Ordinance does not impose vicarious liability on Appellants, and provides expressly that it does not do so. Ordinance § 141.4.1 (quoted above). Appellants may be penalized or disciplined for their own acts or failures to act. The only two provisions of the Ordinance that could even potentially be interpreted in that manner have been stricken. Thus, there is no irreconcilable conflict between the Crimes Code and the Ordinance, and the Ordinance is not preempted. *Holt's Cigar,* 608 Pa. at 153–155, 10 A.3d at 907–908.

### D. *Substantive Due Process*

■ Appellants contend that the Ordinance violates landlords' right to substantive due process under Article 1, Section 1, of the Pennsylvania Constitution. (Appellants' Br. at 41–61.) The trial court correctly rejected this claim.

■ Appellants first argue that the trial court should have applied an intermediate level of scrutiny, rather than a rational basis review. Appellants claim, without any citation, that "[t]he right to own and operate rental property, without assuming a duty to regulate the conduct of adult tenants within the privacy of their homes, is an important and vital interest to all landlords." [10] (Appellants' Br. at 45.)

There is no basis to review the Ordinance under heightened scrutiny, and Appellants cite no authority where a court applied intermediate scrutiny to the exercise of the police power in the landlord-tenant context. In *McSwain v. Commonwealth,* 103 Pa.Cmwlth. 326, 520 A.2d 527, 529 (1987) (*en banc*), we ruled that an ordinance seeking to ensure safe, healthful, and habitable rental dwellings fell within the municipality's police powers and, as such, should be judged under a rational basis review. We explained:

> The power of state and local authorities to act in the areas of health and safety and, thus, within their police powers, is as comprehensive as the demands of society require and the least limitable of their powers. In exercising its police power, the state and its political subdivisions may not only suppress what is offensive, disorderly, and unsanitary, but may enact regulations to promote the public health, morals, or safety and the general well-being of the community.
>
> Under Article I, Section 1, of the Pennsylvania Constitution and the due process clause of the Federal Constitution, the exercise of the police power by state and local entities is limited only to the extent that the law enacted should bear a real and substantial relation to the object sought to be obtained by the law. Thus, it is only where the exercise of the police power is so palpably unreasonable as to suggest that its real object is not to protect the community or to promote the general well-being that a law is subject to judicial rejection.
>
> In exercising its power to legislate for the general welfare of its citizens, a city

---

9. Act of December 6, 1972, P.L. 1482, *as amended,* 18 Pa.C.S. §§ 101–9352.

10. Intermediate scrutiny applies where "state action infringes on an important interest, such as a liberty interest or some other interest vital to the individual, or implicates a sensitive classification, such as gender." *Pennock v. Lenzi,* 882 A.2d 1057, 1066 (Pa. Cmwlth.2005).

has wide discretion in determining what is and is not necessary to those ends, and one challenging the constitutionality of such an enactment has the heavy burden of proving by clear and unmistakable evidence that the law bears no relationship to the ends sought by the city.

*McSwain,* 520 A.2d at 529 (internal citations omitted); *see also National Wood Preservers, Inc. v. Department of Environmental Resources,* 489 Pa. 221, 231–232, 414 A.2d 37, 42–43 (1980) ("The police power is one of the most essential powers of government.... The police power is fundamental because it enables civil society to respond in an appropriate and effective fashion to changing political, economic, and social circumstances, and thus to maintain its vitality and order. The police power of the state must therefore be as comprehensive as the demands of society require under the circumstances. Of necessity, then, the police power is a broad and flexible power. Indeed, it is the state's least limitable power.") (internal quotations and citations omitting).

The Ordinance here "provides for a system of inspections, issuance and renewal of occupancy licenses and sets penalties for violations" in order to further the Borough's stated purpose "to protect and promote the public health, safety and welfare of its citizens." Ordinance § 141.2. Such an ordinance thus falls within the Borough's police powers and is reviewed under a rational basis standard.

■ Appellants next argue that even if a rational basis test applies, the Borough does not have a legitimate government interest to impose "legal oversight and enforcement duties upon an out-of-possession landlord." (Appellants' Br. at 48.) The stated purpose of the Ordinance is for the general welfare of Borough citizens. More specifically, the Ordinance provides

that it is intended to address the decline in the safety and maintenance of rental homes in the Borough and the simultaneous decline in the behavior of tenants in those homes, which has caused problems for other tenants and for *people* who live near rental homes. Ordinance § 141.2. The Borough estimates that over 75 percent of all code violations occur in tenant-occupied structures. *Id.* To address these concerns, the Ordinance, *inter alia,* attempts to control tenant conduct and increase both the Borough's and the landlords' powers to control that conduct. The Ordinance, therefore, bears a real and substantial relation to its intended purpose of promoting the general welfare, and it is not subject to judicial rejection. *National Wood Preservers,* 489 Pa. at 233, 414 A.2d at 43 ("[A]s long as the Legislature exercises that [police] power in a reasonable and nonarbitrary manner, the judiciary will not invalidate the enactment.") (internal citations omitted); *McSwain,* 520 A.2d at 529; *see also Berwick Area Landlord Association v. Borough of Berwick,* No. 07–316, 2007 WL 2065247 (M.D.Pa. July 16, 2007) (rejecting federal substantive due process claim by same plaintiffs regarding same ordinance); *Bloomsburg Landlords Association, Inc. v. Town of Bloomsburg,* 912 F.Supp. 790, 804–05 (M.D.Pa.1995), *aff'd,* 96 F.3d 1431 (3d Cir.1996) (rejecting federal substantive due process claim regarding similar ordinance).

Although Appellants seek to set aside the entire Ordinance, Appellants' primary concern appears to be the "shared responsibilities" language, which the Appellants contend makes them vicariously liable for the acts of tenants. As explained above, Appellants' fears are unfounded. The Ordinance will likely force some landlords operating in the Borough to change the manner in which they operate their residential rental business. That does not

mean, however, that the Ordinance violates the landlords' substantive due process rights.

### E. The Borough's Authority to Enact the Ordinance

■ Appellants next argue that the trial court committed error when it concluded that the Borough Code [11] empowers the Borough of Berwick "to impose non-monetary penalties, including the loss or suspension of a license, for the conduct of third-party tenants." (Appellants' Br. at 61.)

First, as previously explained, the Ordinance does not provide that landlords may be disciplined for the conduct of tenants. Rather, landlords may be disciplined, with a formal warning or the suspension, non-renewal, or revocation of a license, for their own acts or failures to act. Appellants are not expected to prevent illegal tenant conduct. However, landlords are expected to participate with the Borough and take affirmative steps toward curtailing that conduct.

Second, the Ordinance and its penalties are authorized under the Borough Code. *Commonwealth v. Creighton,* 163 Pa. Cmwlth. 68, 639 A.2d 1296, 1300 (1994) (holding that subject to its enabling legislation and pursuant to its police power, a borough has the authority to enact laws that it perceives necessary to protect the public health, safety, and general welfare, so long as the goal sought to be achieved is legitimate and the means used to achieve that goal are reasonably necessary and not unduly oppressive). The Code grants the specific authority to enact ordinances to address disorderly conduct:

> The powers of the borough shall be vested in the corporate authorities. Among the specific powers of the borough shall be the following, and in the exercise of any of such powers involving the enactment of any ordinance or the making of any regulation, restriction or prohibition, the borough may provide for the enforcement thereof and may prescribe penalties for the violation thereof or for the failure to conform thereto:
>
> . . .
>
> (20) Disorderly conduct; disturbance of the peace; ordinances. To adopt ordinances defining disorderly conduct and/or disturbing the peace within the limits of the borough, and to provide for the imposition of penalties for such conduct in such amounts, without limitation except as in this act provided, as council shall establish, and notwithstanding any statutes of the Commonwealth upon disorderly conduct and/or disturbing the peace and the penalties therefor.

Borough Code § 1202, 53 P.S. § 46202.

More broadly, it is the duty of the borough council to enact ordinances "as it shall deem beneficial to the borough and to provide for the enforcement of the same. The legislative powers of boroughs . . . shall be exercised by or be based on an ordinance." Borough Code § 1006(3), 53 P.S. § 46006(3). The Borough Code empowers boroughs specifically:

1. to impose fines and penalties (53 P.S. § 46202(3));
2. to prohibit and remove any nuisance (53 P.S. § 46202(4), (5));
3. to make such regulations as may be necessary for the health, safety, morals, general welfare, and cleanliness and the beauty, convenience, comfort, and safety of the borough (53 P.S. § 46202(6));
4. to adopt ordinances defining disorderly conduct and/or disturbing the peace and for the imposition of penalties for such conduct (53 P.S. § 46202(20));

11. Act of February 1, 1966, P.L. (1965) 1656, *as amended,* 53 P.S. §§ 45101–48501.

5. to enact and enforce ordinances relating to buildings and housing, their repair and maintenance and all facilities and services in or about such buildings or housing; to provide for inspections; to provide for enforcement of such regulations by a reasonable fine, and by instituting appropriate actions or proceedings at law, or in equity, to effect the purposes of this provision and ordinances enacted thereunder (53 P.S. § 46202(24));

6. to exercise the "general powers" "[t]o make and adopt all such ordinances, bylaws, rules and regulations not inconsistent with or restrained by the Constitution and laws of this Commonwealth, as may be deemed expedient or necessary for the proper management, care and control of the borough and its finances, and the maintenance of peace, good government and welfare of the borough and its trade, commerce and manufactures. (53 P.S. § 46202(74)).

The Borough Code also specifically provides that when a borough exercises its powers, it "may provide for the enforcement thereof and may prescribe penalties for the violation thereof or for the failure to conform thereto." 53 P.S. § 46202; *McSwain*, 520 A.2d at 529 (describing municipalities' broad discretion to legislate for the general welfare of its citizens).

Appellants argue that the Borough Code permits monetary penalties only, and not the revocation of a residential rental license. The trial court correctly rejected this argument and ruled that the revocation of a rental license falls within a borough's broad powers, described above, which include the power "to issue licenses and to fine and revoke licenses of those persons who violate reasonable licensing requirements." (Trial Ct. Op. at 15–16.) *See* 53 P.S. §§ 46202(3)-(6), (20), (24), (74).

For all of the above reasons, we affirm the trial court.

### *ORDER*

AND NOW, this 27th day of June, 2012, the order of the trial court in this matter is AFFIRMED.