Anthony M. Rufo and           :
TR Getz, LP                   : No. 2735 C.D. 2015
                              : Argued:  October 18, 2016
              v.              :
                              :
Board of License and Inspection :
Review and City of Philadelphia :
                              :
Appeal of: The City of Philadelphia :


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE JULIA K. HEARTHWAY, Judge
          HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge (P.)


OPINION
BY SENIOR JUDGE FRIEDMAN          FILED:  December 22, 2016


The City of Philadelphia (City) appeals the September 29, 2015, order of the Court of Common Pleas of Philadelphia County (trial court). The trial court reversed the September 30, 2014, decision of the City's Board of License and Inspection Review (Board) that affirmed the Department of License and Inspection's (Department) issuance of a violation notice to Anthony M. Rufo. We affirm.

Rufo is the owner of TR Gretz, LP, which owns the Gretz Brewing Building (Property) located at 1524 Germantown Avenue in the City. (Board's Decision at 1.) On May 14, 2012, the Department conducted an investigation and inspection of the Property. (Board's Findings of Fact, No. 1.) As a result of the Department's investigation and inspection of the Property, the Department issued Rufo a violation notice on May 15, 2012. (Id.) The violation notice stated that the

Property was vacant, lacked doors and windows with frames and glazing, and constituted a "blighting influence" as defined by section PM-202 of the Philadelphia Property Maintenance Code (Property Maintenance Code).[1] (*Id.*, No. 2(e); Violation Not. at 3.) The violation notice further stated that 40 of the Property's windows did not comply with section PM-306.2 of the Property Maintenance Code, which both parties refer to as the "Windows and Doors Ordinance." (Board's Findings of Fact, No. 2(e); Violation Not. at 3.) The Windows/Doors Ordinance states:

> The owner of any vacant building shall keep the interior and exterior of the premises free of garbage and rubbish. The

---

[1] Section PM-202 of the Property Maintenance Code defines "Blighting Influence" as:

A vacant building that lacks windows with frames and glazing and/or lacks one or more doors in entryways of the building if:

1. the building is located on a block face where 80% or more buildings on the block face are occupied; or

2. the Department has provided 20 days notice to the owner of the property that the Commissioner of Licenses and Inspections has determined, in consultation with other City officials as appropriate, that the lack of windows and/or entry doors has a significant adverse influence on the community based on the following factors:

    a. deterioration and/or safety of the property;

    b. safety of the surrounding community;

    c. the value of intact, occupied properties in the surrounding vicinity of the property;

    d. marketability of the property; and

    e. community morale.

owner of any vacant building shall keep all doors, windows and openings from the roof or other areas in good repair. Where such doors or windows or entrance to openings are readily accessible to trespassers, they shall be kept securely locked, fastened or otherwise secured. The owner shall take any other measures prescribed by the Department to prevent unauthorized entry to the premises by closing all openings with materials approved by the Department. A vacant building, which is not secured against entry, shall be deemed unsafe within the meaning of Section PM-307.0. *The owner of a vacant building that is a blighting influence*, as defined in this subcode, *shall secure all spaces designed as windows with windows that have frames and glazing and all entryways with doors*. Sealing such a property with boards or masonry or other materials that are not windows with frames and glazing or entry doors shall *not* constitute good repair or being locked, fastened or otherwise secured pursuant to this subsection.

(Emphases added).

On June 8, 2012, Rufo appealed the violation notice to the Board. Rufo argued that the Windows/Doors Ordinance is unconstitutional "because its purpose is to compel a property to be aesthetically pleasing, rather than safe, which is not a proper use of the municipalities' [sic] police power."[2] (Rufo's Appeal to Board at 2.)

The Board held hearings on Rufo's appeal of the violation notice on May 13, 2014, and July 22, 2014. Rufo testified that he had installed windows in

---

[2] Rufo also argued that: the Windows/Doors Ordinance is "not reasonably related to a compelling government interest"; the Property was not a blighting influence under section PM-202; and the Windows/Doors Ordinance is unconstitutional because it permits the Board to impose excessive and punitive fines. (Rufo's Appeal to Board at 2.)

three of the Property's window spaces. (N.T., 5/13/14, at 36-37.) However, Rufo testified that the three windows were either broken or missing within two weeks of their installation. (*Id.* at 37-38.) Rufo also testified that someone had sprayed graffiti all over the exterior of the Property within that two-week period. (*Id.*)

Rebecca Swanson, Policy and Communications Director for the Department, testified on behalf of the City. Swanson testified that she is familiar with the Windows/Doors Ordinance and that the City Council passed this provision in 2003 and began enforcing it in 2011 "with an eye towards reducing blight." (Board's Findings of Fact, No. 12.) Swanson also testified that "[i]t has been determined, through numerous studies, that properties with boarded windows and doors without the actual operable window and door contribute to blight within the neighborhood, all sorts of problems." (*Id.*, No. 13.)

On September 30, 2014, the Board affirmed the Department's violation notice. The Board found that, at all relevant times, the Property was vacant (*id.*, No. 7), and lacked operable windows and doors. (*Id.*, No. 19.) The Board found that the Department has a process for determining whether a vacant property is a blighting influence under section PM-202(2)(a)-(e) of the Property Maintenance Code and followed that process in determining that the Property was a blighting influence. (Board's Findings of Fact, No. 18.) The Board also found that Rufo could install windows and doors on the Property as required by the Windows/Doors Ordinance and put masonry or wood behind the windows and doors if he was concerned about people breaking into the Property. (*Id.*, No. 17.) The Board credited Swanson's testimony and discredited all other testimony and evidence to the extent that it was

4

inconsistent with the Board's other findings of fact or conclusions of law. (*Id.*, No. 20.)

The Board concluded that the Property was a blighting influence and was in violation of the Windows/Doors Ordinance's requirement that blighting influences have operable doors and windows. (Board's Conclusions of Law, No. 3.) The Board also concluded, without specifically referring to Rufo's argument that the Windows/Doors Ordinance has a purely aesthetic purpose, that Rufo's constitutional arguments were meritless. (*Id.*, No. 5.)

Rufo appealed[3] to the trial court, which reversed the Board's decision on September 29, 2015, determining that the Windows/Doors Ordinance has "a purely aesthetic goal." (Trial Ct. Order, 9/29/15, at 4.) The trial court stated:

> The essential implementation of this ordinance in this case appears to be concerned more with aesthetics and the appearance of occupancy rather than blight, safety and security. Such a purely aesthetic goal has a minimal relationship to reducing blight (which is a complicated integration of economics, poverty, crime, aesthetics and social issues) requiring a cost to the property owner that is completely disproportionate to the benefit of a reduction in "blight" that may (although it may not) result.

(*Id.*) The trial court found that the "purely aesthetic nature" of the Windows/Doors Ordinance was further demonstrated by the fact that Rufo could comply with the

---

[3] Rufo did not preserve his argument that the Property is not a blighting influence under section PM-202(2)(a)-(e) of the Property Maintenance Code.

Windows/Doors Ordinance by securing window and door openings with masonry or wood *as long as* he placed operating windows and doors in front of the openings. (*Id.*)

On October 23, 2015, the City filed a notice of appeal to this court.[4] The trial court filed a Pa. R.A.P. 1925(a) opinion recommending that this court quash the City's appeal because the City never sent a copy of the notice of appeal to the trial court.[5] In the alternative, the trial court submitted to this court the findings made in its September 29, 2015, order.

The City argues that the trial court erred in not enforcing the Windows/Doors Ordinance because that provision is rationally related to promoting the public health, safety, and welfare, and does not have a purely aesthetic purpose. We disagree.

A municipality's exercise of the police power "involves the regulation of property to promote the health, safety and general welfare of the people." *Balent v. City of Wilkes-Barre*, 669 A.2d 309, 314 (Pa. 1995). In determining the validity of a

---

[4] "Where the court below took no additional evidence, our scope of review is limited to determining whether constitutional rights were violated, errors of law have been committed or findings of fact necessary to support the adjudication are not supported by substantial evidence." *Clark v. Board of License and Inspections Review*, 439 A.2d 1291, 1292 (Pa. Cmwlth. 1981).

[5] Rufo does not argue that the City's appeal should be quashed, and there is no evidence that any party was prejudiced by the City's alleged failure to file a notice of appeal with the trial court. Under these circumstances, we decline to quash the City's appeal. *See* Pa. R.A.P. 902 ("Failure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but it is subject to such action as the appellate court deems appropriate . . . .").

municipal regulation enacted pursuant to a municipality's police power, courts must apply the rational basis standard. *Berwick Area Landlord Association v. Borough of Berwick*, 48 A.3d 524, 537 (Pa. Cmwlth. 2012). The regulation must "'bear a real and substantial relation to the object sought to be obtained.'" *Id.* (citation omitted). "[I]t is axiomatic that any exercise of the police power . . . may not be grounded *solely* on considerations of aesthetics." *Redevelopment Authority of the City of Oil City v. Woodring*, 430 A.2d 1243, 1246 (Pa. Cmwlth. 1981) (*en banc*) (emphasis added), *aff'd*, 445 A.2d 724 (Pa. 1982).

Here, the Board credited Swanson's testimony that "numerous studies" have shown that securing properties deemed blighting influences with boards or masonry rather than operable windows and doors "contribute[s] to blight within the neighborhood, all sorts of problems." (Board's Findings of Fact, No. 13.) However, Swanson's testimony is conclusory because she failed to offer even a cursory explanation for her assertion or specify which study supported her assertion. The only study which appears in the record, Blight-Free Philadelphia, does not include a finding that securing the window and door areas of blighted homes with boards or masonry contributes to blight.

The City also argues that the testimony from a 2002 City Council hearing on the adoption of the Windows/Doors Ordinance establishes that the purpose of the provision was to remedy the safety risk posed by blighted buildings. However, this court may not consider this testimony because it is not included in the original record. *See Mack v. Zoning Hearing Board of Plainfield Township*, 558 A.2d 616, 619 (Pa. Cmwlth. 1989) ("[A]n appellate court may only consider facts

7

which have been duly certified in the record on appeal."). Therefore, the credited evidence of record does not establish a substantial relation between the Windows/Doors Ordinance and the reduction of blight.

Additionally, the Board found that Rufo could secure the Property's window and door spaces with masonry or wood "if [he] was concerned about people getting into the [b]uilding" and still comply with the Windows/Doors Ordinance as long as the masonry or wood was placed *behind* actual doors and windows with frames and glazing. (Board's Findings of Fact, No. 17.) This finding demonstrates that the Windows/Doors Ordinance is concerned only with the aesthetic appearance of vacant buildings rather than the safety risks posed by blight. The City may consider aesthetics in using its police power, but it may not exercise its police power based on aesthetics alone. Therefore, the trial court did not err in concluding that the Windows/Doors Ordinance is based purely on aesthetic considerations and, thus, is an impermissible use of the police power.

Accordingly, we affirm.

_____
ROCHELLE S. FRIEDMAN, Senior Judge

8

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Anthony M. Rufo and                       :
TR Getz, LP                               : No. 2735 C.D. 2015
                                          :
                    v.                    :
                                          :
Board of License and Inspection           :
Review and City of Philadelphia           :
                                          :
Appeal of: The City of Philadelphia       :


O R D E R


AND NOW, this 22<u>nd</u> day of <u>December</u>, 2016, we hereby affirm the September 29, 2015, order of the Court of Common Pleas of Philadelphia County.


_____
ROCHELLE S. FRIEDMAN, Senior Judge