IN THE SUPREME COURT OF PENNSYLVANIA
EASTERN DISTRICT

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| ANTHONY M. RUFO AND TR GRETZ, LP | : | No. 22 EAP 2017 |
| | : | |
| | : | Appeal from the Order of |
| | : | Commonwealth Court entered on |
| v. | : | 12/22/2016 at No. 2735 CD 2015 |
| | : | (reargument denied 02/17/2017) |
| | : | affirming the Order entered on |
| BOARD OF LICENSE AND INSPECTION | : | 09/22/2015 by the Court of Common |
| REVIEW AND CITY OF PHILADELPHIA | : | Pleas, Philadelphia County, Civil |
| | : | Division at No. 3768 October Term |
| | : | 2014. |
| APPEAL OF: THE CITY OF | : | |
| PHILADELPHIA | : | ARGUED: May 16, 2018 |

## OPINION

**JUSTICE BAER**                                      **DECIDED: September 13, 2018**

The Property Maintenance Code ("Code") consists of a series of ordinances promulgated by the City of Philadelphia ("City") to regulate the maintenance of properties located in the City. This appeal involves a constitutional challenge to a provision of the Code that requires owners of vacant buildings that are a "blighting influence," discussed *infra*, to secure all spaces designed as windows with working glazed windows and all entryways with working doors. Appellees, owners of a vacant property that was cited for violating this ordinance ("Owners"), challenged the provision, contending, *inter alia*, that it is an unconstitutional exercise of the City's police power. The City's Board of License and Inspection Review ("Board") rejected Owners' arguments; however, the trial court agreed with Owners and deemed the ordinance unconstitutional. The Commonwealth Court affirmed, concluding that the ordinance is an unconstitutional exercise of the City's

police power because it is concerned with the aesthetic appearance of vacant buildings, not the safety risks posed by blight. For the reasons set forth herein, we hold, respectfully, that the Commonwealth Court and trial court erred in this regard. Consequently, we vacate the orders of the Commonwealth Court and trial court, and remand the matter to the trial court for consideration of Owners' remaining issues.

The record establishes that the building at issue in this appeal, which was previously home to Gretz Brewing Company, is located in the City at 1524 Germantown Avenue (the "Property"). In August of 2003, Appellee TR Gretz, L.P.,[1] purchased the Property, which was and continues to be vacant. Appellee Anthony M. Rufo ("Rufo") describes himself as the general managing partner of TR Gretz, L.P. (Again, we will refer to Appellees collectively as "Owners.")

On May 14, 2012, the City's Department of License and Inspection ("Department") conducted an inspection of the Property. The following day, the Department issued an "Initial Notice of Violation and Order." Therein, the Department, *inter alia*, declared the Property to be a "blighting influence" on the community and in violation of Section PM-306.2 of the Code.[2] Section PM-306.2 stated, in full, as follows:

---

[1] In the Commonwealth Court, this case was improperly captioned, naming TR Gretz, L.P. as "TR Getz, LP." We have corrected the caption to reflect the party's proper name.

[2] The City recently repealed and replaced the Code, which has led to the reconfiguration and renumbering of its various sections. The portion of Section PM-306.2 at issue in this case now can be found, in substantial part, at Section PM-901.2 of the Code. Further, when the Department issued its notice of violation and order, the Code defined "blighting influence," in relevant part, as follows:

> A vacant building that lacks windows with frames and glazing and/or lacks one or more doors in entryways of the building if:
>
> * * *
>
> 2. the Department has provided 20 days notice to the owner of the property that the Commissioner of Licenses and Inspections has

The owner of any vacant building shall keep the interior and exterior of the premises free of garbage and rubbish. The owner of any vacant building shall keep all doors, windows and openings from the roof or other areas in good repair. Where such doors or windows or entrance to openings are readily accessible to trespassers, they shall be kept securely locked, fastened or otherwise secured. The owner shall take any other measures prescribed by the Department to prevent unauthorized entry to the premises by closing all openings with materials approved by the Department. A vacant building, which is not secured against entry, shall be deemed unsafe within the meaning of Section PM–307.0. *The owner of a vacant building that is a blighting influence, as defined in this subcode, shall secure all spaces designed as windows with windows that have frames and glazing and all entryways with doors. Sealing such a property with boards or masonry or other materials that are not windows with frames and glazing or entry doors shall not constitute good repair or being locked, fastened or otherwise secured pursuant to this subsection.*

Code at § PM-306.2 (repealed and replaced) (emphasis added).

Owners lodged an appeal with the Board, contending, *inter alia*, that Section PM-306.2 of the Code violates constitutional principles of substantive due process. In this regard, Owners asserted that Section PM-306.2 is invalid and unconstitutional "because its purpose is to compel a property to be aesthetically pleasing, rather than safe, which is not the proper use of the municipalities' [*sic*] police power." Addendum to Appeal,

determined, in consultation with other City officials as appropriate, that the lack of windows and/or entry doors has a significant adverse influence on the community based on the following factors:

a. deterioration and/or safety of the property;

b. safety of the surrounding community;

c. the value of intact, occupied properties in the surrounding vicinity of the property;

d. marketability of the property; and

e. community morale.

Code at § PM-202.0 (repealed and replaced). In its current form, the Code refers to "blighting influence" as "blighting problem." Code at § PM-202. However, save for inconsequential differences, the Code defines "blighting problem" in the same manner that it previously defined "blighting influence."

6/8/2012, at ¶7. The appeal was continued several times to allow the parties to resolve some of the problems with the Property, but a three-member panel of the Board eventually held hearings to address the parties' remaining issues on May 13th and July 22nd of 2014.

At those hearings, the following witnesses testified in a manner that was generally favorable to Owners: (1) Rufo; (2) Rufo's son, Anthony J. Rufo ("Son"); and (3) Mark Wade, a realtor. One witness testified for the City, namely, Rebecca Swanson, a Policy and Communications Officer for the Department. For ease of discussion, we first will summarize the testimony offered by Rufo, Son, and Wade, followed by a summary of Swanson's testimony.

Rufo acknowledged that the Property continued to be in violation of the Code insomuch as 31 of the Property's 40 windows failed to comply with Section PM-306.2. N.T., 5/13/2014, at 23-26. Rufo, however, testified that within a week of putting three new windows in the Property, they were broken. *Id.* at 28. Rufo also acknowledged that the parties previously had agreed that Owners could clear the Code violations by either demolishing the Property or obtaining a zoning permit to start to develop the Property. Owners were unable to accomplish either option for various reasons. *Id.* at 26-31.

During his testimony, Son, who is in business with Rufo, conceded that the Property was in "poor to blighted condition" when Owners purchased it. *Id.* at 65. Son testified that, since Owners bought the Property, they have had to invest $500,000 to $600,000 into it for maintenance purposes. *Id.* at 66-67. Son explained that, to secure the Properties' various doors and windows, they utilized "structural materials, such as masonry and steel." *Id.* at 70. At this point in Son's testimony, a member of the Board asked Son whether he could put structural materials behind a window if he was concerned about people getting into the building, and Son answered, "Technically, yes, I could." *Id.* at 70-71. Throughout his testimony, Son insisted that the Property is secure and inaccessible to people and that putting windows and doors on the building would invite

squatters and vandalism, though he also acknowledged that other occupied properties in the area, such as a mosque, do not have broken windows. *Id.* at 85.

Owners lastly offered Wade's testimony over the City's relevancy objection. N.T., 7/22/2014, at 2-11. At the time of the hearing, Wade was a realtor with 25 years of experience with real estate in the City. *Id.* at 11-12. Wade described the Property "as a giant eyesore." *Id.* at 13-14. According to Wade, the addition of windows and doors to a vacant building, such as the Property, increases the value of the building only by an amount equal to the value of the doors and windows. *Id.* at 14-16. Wade also asserted that the addition of windows to the Property would not reduce blight. *Id.* at 21. However, upon questioning from the Board, Owners' counsel conceded that Wade could not testify as an expert on the noneconomic benefits of community cohesion or crime reduction. *Id.* at 23. Further, Wade admitted that: (1) his area of expertise in the real estate business was residential; (2) he was not an urban planner; and (3) he had never conducted research on blight and how it affects the quality of life in a neighborhood. *Id.* at 23-25.

However, Swanson, the Policy and Communications Director for the Department, testified that the City originally passed Section PM-306.2, which she referred to as the "Windows and Doors Ordinance," in 2003 and began enforcing the ordinance in 2011 "with an eye towards reducing blight in neighborhoods throughout the City." N.T., 5/13/2014, at 45. Swanson further testified that "[i]t's been determined, through numerous studies, that properties with boarded windows and doors without the actual operable window and door contribute to blight with the neighborhood[.]"[3] *Id.* at 45-46. Swanson stated that the City utilized several studies in crafting the five "blight influencing" factors listed in Section 202.0(2) of the Code, *supra* at 2-3 n.2. N.T., 5/13/2014, at 50-51. Swanson specifically referenced two studies: (1) Vacant Land Management in

---

[3] Owners' counsel raised various hearsay objections to Swanson's testimony regarding studies. As with all of the parties' objections, the Board simply noted Owners' objections.

Philadelphia; and (2) Blight Free Philadelphia. *Id.* at 51-54. Counsel for the City entered these studies into evidence as exhibits. *Id.* Swanson also testified that, although the Code does not define "morale" (*i.e.,* one of the five "blight influencing" factors), the City considers complaints from residents regarding properties. *Id.* at 56. According to Swanson, the City has received a large number of complaints about the Property. *Id.*

On May 18, 2015, the Board affirmed the City's notice of violation and order. In support of its decision, the Board issued findings of facts and conclusions of law. Relevant to the issues before this Court, the Board, reflecting on Son's testimony, stated that Owners "could install windows and doors as required by the Code and put masonry and wood behind them if [they were] concerned about people getting into the [Property]." Board's Findings of Fact, 5/18/2015, at ¶17 (citing N.T., 5/13/2014, at 71). The Board also found Swanson's testimony to be credible and that "any other evidence that is inconsistent with the other findings of fact or conclusions of law is not credible." Board's Findings of Fact, 5/18/2015, at ¶20. In terms of conclusions of law, the Board determined that the Property is a "blighting influence" and in violation of Section PM-306.2 of the Code. Board's Conclusions of Law, 5/18/2015, at ¶3. Lastly, without providing any discussion, the Board deemed meritless Owners' constitutional challenges to Section PM-306.2. *Id.* at ¶5.

Owners pursued a statutory appeal in the trial court, renewing their arguments regarding the constitutionality of Section 306.2 of the Code. The trial court reversed the Board's decision, relying solely on the evidence offered at the Board's hearings. In so doing, the court asserted that, "[a]lthough aesthetics may be taken into consideration in determining the validity of a zoning ordinance, an aesthetic objective alone is insufficient to sustain it." Trial Court Order, 9/29/2015, at ¶9 (citing, *inter alia*, *H. A. Steen Indus., Inc. v. Cavanaugh*, 241 A.2d 771 (Pa. 1968)).

According to the trial court, the record is devoid of any evidence which demonstrates that putting windows and doors on the Property would make it safer. *Id.* at ¶10. The court suggested that "there is a question as to whether adding windows and doors will make the [P]roperty more accessible to vandals and vagrants." *Id.* Next, the court stated that Section PM-306.2 appears to be more concerned with aesthetics rather than blight, safety, and security. The court opined that "[s]uch a purely aesthetic goal has a minimal relationship to reducing blight (which is a complicated integration of economics, poverty, crime, aesthetics and social issues) requiring a cost to the property owner that is completely disproportionate to the benefit of a reduction in 'blight' that may (although it may not) result." *Id.*

Citing to Son's testimony, the court further asserted that "the record indicates that installing wood and masonry behind the windows and doors on the [P]roperty with perhaps a mural or the like would satisfy the violation."[4] *Id.* at ¶11 (citing N.T., 5/13/2014, at 71). According to the court, "[t]he fact that installing masonry and wood behind the windows and doors would satisfy the violation demonstrates the purely aesthetic nature of the ordinance." *Id.*

The City appealed to the Commonwealth Court, arguing, in general terms, that the trial court erred by deeming Section PM-306.2 unconstitutional. The Commonwealth Court ultimately affirmed the trial court's order in a published opinion. *Rufo v. Bd. of License & Inspection Review*, 152 A.3d 400 (Pa. Cmwlth. 2016). With respect to the constitutionality of Section PM-306.2, the court first acknowledged that a municipality's exercise of its police power involves the regulation of property to promote the health, safety, and general welfare of the people. *Id.* at 403 (quoting *Balent v. City of Wilkes-*

_____

[4] This statement is not a fair assessment of the record. Son did not testify that he could satisfy the violation by placing wood and masonry behind windows and doors. Rather, as detailed above, Son merely testified that he could put structural materials behind a window if he was concerned about people getting into the Property. *Supra* at 4-5.

*Barre*, 669 A.2d 309, 314 (Pa. 1995)). The court also recognized that determining the validity of a municipal regulation enacted pursuant to police power requires courts to apply a rational basis standard. In other words, a court should examine a challenged ordinance to determine whether it bears "a real and substantial relation to the object sought to be obtained." *Id.* (quoting *Berwick Area Landlord Ass'n v. Borough of Berwick*, 48 A.3d 524, 537 (Pa. Cmwlth. 2012)). The court further noted that any exercise of police power cannot be grounded solely on considerations of aesthetics. *Id.* at 403-04 (quoting *Redevelopment Authority of Oil City v. Woodring*, 430 A.2d 1243, 1246 (Pa. Cmwlth. 1981) (indicating that, "[a]lthough it is true, of course, that a city may have broad discretion in using the police powers to control its street, . . . it is axiomatic that any exercise of the police power must be rationally related to the general health, safety and welfare and such an exercise may not be grounded solely on considerations of aesthetics")).

The Commonwealth Court observed that the Board credited Swanson's testimony that numerous studies have shown that securing properties deemed blighting influences with boards or masonry, rather than operable windows and doors, contributes to blight. The court, however, characterized this testimony as conclusory because Swanson "failed to offer even a cursory explanation for her assertion or specify which study supported her assertion." *Id.* at 404. Moreover, the court stated, the only study contained in the record, Blight Free Philadelphia, does not include a finding that supports Swanson's testimony.[5]

Next, the Commonwealth Court noted that the City supported its argument with testimony from a 2002 City Council hearing regarding the adoption of Section PM-306.2. The court concluded that it could not consider this testimony because it was not included in the original record. The court then simply asserted, "Therefore, the credited evidence

---

[5] Although it is clear that the City entered other studies into evidence as exhibits during the hearings in front of the Board, the Commonwealth Court is accurate that the certified record contains only one study, namely, Blight Free Philadelphia.

of record does not establish a substantial relation between the Windows/Doors Ordinance and the reduction of blight." *Id.*

In closing, the Commonwealth Court, building on the trial court's mischaracterization of Son's testimony (as described *supra* at 7 n.4), insisted that the Board found that Rufo could secure the Property's door and window spaces with masonry or wood and still comply with Section PM-306.2 "as long as the masonry or wood was placed *behind* actual doors and windows with frames and glazing." *Id.* (emphasis in original). In the court's view, "[t]his finding demonstrates that the Windows/Doors Ordinance is concerned only with the aesthetic appearance of vacant buildings rather than the safety risks posed by blight." *Id.*

The City filed a petition for allowance of appeal, which we granted to consider the following issues, as phrased by the City:

> a. Did the Commonwealth Court rewrite decades of caselaw in expressly placing the burden on the municipality to produce evidence of the rational basis for a land use Ordinance, rather than placing the burden of proof where it belongs, on the party challenging the Ordinance?

> b. Did the Commonwealth Court, in invalidating an anti-blight, property maintenance Ordinance on the ground that aesthetics cannot form the basis for land use legislation, improperly undermine the ability of municipal government to combat urban blight and improperly substitute its own views for those of the legislature as to the efficacy of municipal legislation?

*Rufo v. Bd. of License & Inspection Review*, 169 A.3d 1035, 1035-36 (Pa. 2017).

The City first contends that the Commonwealth Court's opinion demonstrates that the court erroneously believed that the City bore the burden of proving that Section PM-306.2 is constitutional, ignoring the well-settled principles of law that an act of legislation, including a local ordinance, is presumed to be constitutional and that a party challenging a piece of legislation has a heavy burden of proving that it is unconstitutional.[6] *See* Brief

---

[6] Several parties have filed in this Court *amicus curiae* briefs in support of the City, namely: the Philadelphia Association of Community Development Corporations, the

for the City at 15 (quoting *Zauflik v. Pennsbury Sch. Dist.*, 104 A.3d 1096, 1103 (Pa. 2014) (stating that this Court "will not declare a statute unconstitutional 'unless it clearly, palpably, and plainly violates the Constitution'" and that "[i]f there is any doubt that a challenger has failed to reach this high burden, then that doubt must be resolved in favor of finding the statute constitutional") (citations omitted)). In support of its position, the City highlights that the Commonwealth Court's chief reason for finding the ordinance to be unconstitutional was that "the credited evidence of record," which consisted almost exclusively of testimony from Swanson, failed "to establish a substantial relation between the Windows/Doors Ordinance and the reduction of blight." Brief for the City at 14 (quoting *Rufo*, 152 A.3d at 404). According to the City, it had no burden whatsoever to establish the constitutionality of the ordinance; rather, "[i]t was the property owner who had the burden to demonstrate that the [o]rdinance bore *no* rational connection to a legitimate governmental purpose." *Id.* at 15 (emphasis in original).

Owners do not contest that they bore the burden of proving that the ordinance is unconstitutional; rather, they take the position that the Commonwealth Court did not impose an inappropriate burden on the City. Interestingly, Owners maintain that "a careful review of the Commonwealth Court opinion shows no instance where any evidentiary burden was actually discussed and applied." Owners' Brief at 24. Instead, according to Owners, the court "merely recognized the City's evidence for what it was - i.e. insufficient proof that the [o]rdinance alone would combat blight."[7] *Id.*

---

Tacony Community Development Corporation, the New Kensington Community Development Corporation, the Viola Street Residents Association, the Centennial Parkside Community Development Corporation, the North 5th Street Revitalization Project, the University of Pennsylvania, and the University of Pennsylvania Health System.

[7] Whether the Commonwealth Court applied an incorrect burden of proof constitutes a question of law. Accordingly, our standard of review is *de novo*, and our scope of review is plenary. *In re Vencil*, 152 A.3d 235, 241 (Pa. 2017).

We begin our analysis by observing that the Code explains its intent in the following manner:

> This code shall be construed to secure its expressed intent, which is to insure public health, safety and welfare to the extent they are affected by the continued occupancy and maintenance of existing structures and premises. Existing structures and premises which are not in compliance with this code shall be altered or repaired to provide the minimum health, safety and welfare as required herein.

Code at § PM-101.3 Intent (repealed and replaced).[8] Thus, on its face, the Code is an exercise of the City's police power. *See Balent*, 669 A.2d at 314 ("The police power, on the other hand, involves the regulation of property to promote the health, safety and general welfare of the people."). Consequently, to pass constitutional muster, the Code, and the provisions therein, "must not be unreasonable, unduly oppressive or patently beyond the necessities of the case, and *the means which it employs must have a real and substantial relation to the objects sought to be attained*." *Lutz v. Armour*, 151 A.2d 108, 110 (Pa. 1959) (emphasis in original).

Importantly, ordinances enjoy the presumption that they are constitutionally valid. *Id.* Moreover, it is indisputable that the party challenging the constitutionality of an ordinance carries the heavy burden of proving that it is unconstitutional. *See Upper Salford Twp. v. Collins*, 669 A.2d 335, 336 (Pa. 1995) ("Anyone challenging the constitutionality of such an ordinance bears a heavy burden of proof."). Indeed, the "heavy burden resting upon the person asserting unconstitutionality of legislation is one of the most firmly established principles of our law[.]" *Bilbar Constr. Co. v. Bd. of Adjustment of Easttown Twp.*, 141 A.2d 851, 855 (Pa. 1958) (collecting cases). To meet that heavy burden of proof, a challenger must demonstrate that the legislative enactment at issue clearly, palpably, and plainly violates the Constitution, such that there is no doubt

---

[8] The intent provision of the Code remains at Section PM-101.3. In its current form, the intent of the Code remains virtually identical to that stated *supra*.

or hesitation in the mind of the court. *See id.* (explaining that a "legislative enactment can be declared void only when it violates the fundamental law clearly, palpably, plainly and in such manner as to leave no doubt or hesitation in the minds of the court").

Yet, as discussed in detail *supra*, in addressing the City's various arguments related to the trial court's declaration of unconstitutionality, the Commonwealth Court first rejected testimony provided by Swanson on behalf of the City, which the fact-finder found to be credible and which established the nexus between blight and the need for vacant buildings to have operable doors and windows. Next, the court refused to consider the City's contention that testimony from a City Council hearing established the intent of the Code. The court then asserted, without elaboration, that "the credited evidence of record does not establish a substantial relation between the Windows/Doors Ordinance and the reduction of blight." *Rufo*, 152 A.3d at 404. The court bolstered this assertion by alluding to Son's testimony that Owners could place masonry and wood behind windows if they were concerned with the security of the Property.

This cursory analysis strongly suggests, if not firmly demonstrates, that the Commonwealth Court looked at the City's evidence to determine whether it established the constitutionality of Section PM-306.2. However, the City was not required to establish the constitutionality of the ordinance; rather, as the parties challenging Section PM-306.2, Owners possessed the heavy burden of proving that the ordinance, which is presumptively valid, is unconstitutional. Because the court's reasoning did not account for these time-honored principles of law, its conclusion that the ordinance is unconstitutional cannot stand. While we could vacate the Commonwealth Court's order and remand the matter with instructions to reevaluate the City's arguments in accordance

with these standards, we decline to do so for sake of judicial economy and, instead, will address the constitutionality of Section PM-306.2 of the Code.[9]

We begin by summarizing the City's arguments. Although the City did not have the burden of proving the constitutionality of the Section PM-306.2, as the appellant herein, it offers a robust and thorough argument in support of its belief that Section PM-306.2 meets constitutional requirements. Among the City's many contentions is that Owners did not rebut the presumption that Section PM-306.2 represents a constitutional exercise of the City's police power. Brief for the City at 19-20. In other words, the City takes the position that Owners failed to prove that the ordinance is not substantially related to its purpose of promoting public health, safety, and welfare by regulating the occupancy and maintenance of property located in the City to reduce blight. *Id.* at 20-23. Regarding blight, the City points out that this Court previously has explained, "Urban blight is a serious problem which unfortunately affects many of this Commonwealth's cities. It saps our once-vibrant neighborhoods. The government unquestionably has a compelling interest in combating this problem." *In re Condemnation by Urban Redevelopment Auth. of Pittsburgh*, 913 A.2d 178, 189 n.13 (Pa. 2006).

With respect to the Commonwealth Court's conclusion that Section PM-306.2 merely seeks to promote aesthetics, the City argues that the court substituted its judgment for that of the City, which reasonably determined that adding operable windows and doors to vacant buildings reduces blight and the problems associated with it. Brief for the City at 24. The City suggests that logic makes clear that requiring property owners to maintain vacant buildings with windows and doors reduces blight. The City rhetorically asks, "[W]ould you rather live or work or invest down the block from a building covered in boards or cement, or a building adorned with glass windows, real window frames, and

---

[9] Whether Section PM-306.2 is constitutionally sound presents a question of law. Thus, our scope and standard of review are consistent with that noted above. *Supra* at 11 n.7.

operative doors?" *Id.* at 25. The City offers several more arguments in its brief; however, in sum, the City is of the view that Section PM-306.2 constitutes a valid exercise of its police power and that Owners failed to prove otherwise.

Owners, on the other hand, contend that this Court should affirm the Commonwealth Court's order because that court correctly concluded that Section PM-306.2 is unconstitutional. Owners' Brief at 16-23. According to Owners, "the [o]rdinance is clearly unconstitutional since it focuses solely on aesthetics and is not reasonably related to the stated purpose of combatting blight." Owners' Brief at 18. Owners highlight the potential fines and costs that they will face if this Court does not agree with the lower courts' declaration that the ordinance is unconstitutional. *Id.* Owners take the position that these high costs should not be placed on property owners because the testimony before the Board, presumably that of Rufo, Son, and Wade, demonstrated that placing windows and doors on a vacant property makes the property more accessible to vandals and vagrants, thus undermining any notion that the ordinance seeks to insure safety in the communities. *Id.* at 19.

Owners then attack the evidence submitted by the City in support of its contention that Section PM-306.2 is constitutional. For example, Owners suggest that the studies cited by the City do not support a conclusion that simply placing windows and doors on vacant buildings, in and of itself, reduces blight-related problems. *Id.* at 21. In closing, Owners assert that "not only is the [o]rdinance not rationally related to its purpose, it renders the property more dangerous and more of a potential public nuisance, and invites additional blight." *Id.* at 23.

As we noted above, the overarching intent of the Code is to maintain existing structures in the City to insure public health, safety, and welfare. Code at § PM-101.3 Intent (repealed and replaced). The Code makes clear that the City planned to accomplish this goal by reducing blight - a serious problem that the "government

unquestionably has a compelling interest in combating[.]" *In re Condemnation by Urban Redevelopment Auth. of Pittsburgh*, 913 A.2d at 189 n.13. Thus, the City exercised its police power by adopting a number of measures aimed at decreasing blight, including requiring owners of vacant buildings to secure window and door spaces with operable windows and doors. Code at § PM-306.2 (repealed and replaced).

Owners have failed to prove that the City's policy regarding windows and doors is solely aimed at improving the aesthetics of vacant buildings. It is unassailable that the City, through the exercise of its police power, has the inherent right to attack blight within its confines. As discussed *supra*, Swanson's testimony, which the Board credited, indicated that the City promulgated Section PM-306.2 in 2003 and began enforcing the ordinance in 2011 "with an eye towards reducing blight in neighborhoods throughout the City." N.T., 5/13/2014, at 45. In support of this assertion, Swanson explained that the City considered multiple studies which suggested that properties with boarded windows and doors contribute to blight. *Id.* at 45-46. Indeed, it was on the basis of these studies that the City crafted the five "blight influencing" factors enumerated in Section 202.0(2) of the Code, *supra* at 2-3 n.2. N.T., 5/13/2014, at 50-51.

Thus, the credited evidence of record demonstrates that the City utilized the legislative process and concluded "that the lack of windows and/or entry doors has a significant adverse influence on the community based on the following factors: (a.) deterioration and/or safety of the property; (b.) safety of the surrounding community; (c.) the value of intact, occupied properties in the surrounding vicinity of the property; (d.) marketability of the property; and (e.) community morale." Code at § PM-202.0(2) (repealed and replaced). Stated succinctly, the City, which had no burden to prove the constitutionality of Section PM-306.2, explained the basis for its use of its police powers, its rationale for passing the ordinance, and the result it trusted the ordinance would achieve in the fight against blight. Owners failed to offer any evidence or persuasive

argument to overcome the presumed constitutionality of the City's exercise of its legislative prerogative in furtherance of its compelling interest in combatting blight. Thus, Owners did not sustain their burden of proving that Section Pm-306.2 of the Code constitutes an unconstitutional exercise of the City's police power.

Having reached these conclusions, we observe that Owners invite the Court to affirm the Commonwealth Court's order on other grounds, namely, that: (1) Section PM-202.0(2) is unconstitutionally vague, Owners' Brief at 26-30; and (2) the fines permitted by Section PM-306.2 are unconstitutionally excessive and confiscatory, *id.* at 30-35. We decline Owners' invitation to address these arguments as they fall outside of the issues which this Court granted allowance of appeal to consider.

We note, however, that Owners raised these issues in their statutory appeal to the trial court. *See* Owners' Brief in Support of their Statutory Appeal, 6/8/2015, at 9-11 and 16-18. The trial court did not address these issues, presumably because it already had deemed Section PM-306.2 unconstitutional on substantive due process grounds, and Owners, as the appellees in the Commonwealth Court, had no obligation to preserve the issues moving forward. Accordingly, we vacate the Commonwealth Court's order, as well as the trial court's order, and we remand the matter to the trial court to address Owners' outstanding issues.

Chief Justice Saylor and Justices Todd, Donohue, Dougherty, Wecht and Mundy join the opinion.

Justice Wecht files a concurring opinion.